THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* THE VIKING PRESS, INC., and HELEN SCHILLER, Defendants.

Magistrate's Court, City of New York, Fourth District, Borough of Manhattan, May 23, 1933.

*Harold Frankel, Deputy Assistant District Attorney,* for the plaintiff.

*Hays, Hershfield, Kaufman & Schwabacher [Wolfgang S. Schwabacher* and *James M. Grossman* of counsel], for the defendants.

GREENSPAN, City Magistrate.   This prosecution is instituted by The New York Society for the Suppression of Vice, through Mr. John S. Sumner, its secretary and attorney, against The Viking Press, Inc., the publishers of a certain book by one Erskine Caldwell entitled " God's Little Acre," and against Helen Schiller, a clerk in the employ of the publishers, who sold the book to an agent of the society.

It is claimed that the sale of the book is a violation of section 1141 of the Penal Law and that the book is, within the meaning of that statute, " obscene, lewd, lascivious, filthy, indecent, or disgusting."   In order to sustain the prosecution, the court must find that the tendency of the book as a whole, and indeed its main

purpose, is to excite lustful desire and what has been rather fancifully called "impure imaginations." (*People* v. *Muller*, 96 N. Y. 408.) The statute is aimed at pornography, and a pornographic book must be taken to be one where all other incidents and qualities are mere accessories to the primary purpose of stimulating immoral thoughts.

The courts have strictly limited the applicability of the statute to works of pornography and they have consistently declined to apply it to books of genuine literary value. If the statute were construed more broadly than in the manner just indicated, its effect would be to prevent altogether the realistic portrayal in literature of a large and important field of life. The Court of Appeals has consistently frowned upon such an interpretation of the statute. (*People* v. *Wendling*, 258 N. Y. 451; *Halsey* v. *N. Y. Society for the Suppression of Vice*, 234 id. 1.) (See, also, *People* v. *Brainard*, 192 App. Div. 816, regarding the book called " Madeleine," an anonymous autobiography of a prostitute.) It is claimed, on behalf of the defendants, that the book in the instant case, Caldwell's " God's Little Acre," has high literary merit. In support of this claim, counsel for the defendants have collected and presented to this court a large number of testimonials from people eminent in the literary life of this city and country, as well as from others distinguished in social work, education and other fields. Some of these testimonials were written especially for presentation to this court. Others are culled from literary reviews and newspapers. Among the latter, which are necessarily to be given more weight than those written especially for the purpose of defeating this prosecution, the court finds praise of the merits of the book by the following: Franklin P. Adams in the New York *Herald-Tribune* of January 28, 1933; William Soskin in the New York *Evening Post* of April 29, 1933; Horace Gregory in the New York *Herald-Tribune Book Review* of February 5, 1933; an unnamed reviewer in the London *Times Literary Supplement* of March 23, 1933; James T. Farrell in the New York *Sun* of February 7, 1933; Louis Kronenberger in the New York *Times* of February 5, 1933; a reviewer in the New York *Evening Post* of February 7, 1933, who refers to the book as " a passionately honest book; " Gilbert Seldes in the New York *Journal* of February 11, 1933, who describes the book as " engaging and impressive at once; " Jonathan Daniels in the *Saturday Review of Literature*, as quoted in the Raleigh, North Carolina, *News Observer* of March 5, 1933; and Joseph Henry Jackson in the San Francisco *Chronicle* of February 17, 1933. The court regards this as a fair cross-section of American literary opinion, by a group of men competent to judge with reasonable accuracy the value of contemporary American books.

The brief presented to this court by Mr. Sumner makes the following references to these reviews: " We have seen this attempted before and the question arises as to whether a criminal prosecution is to be determined by interested parties having access to the newspapers and no interest in public welfare or by the courts existing for that purpose and representing the whole people and not only the literati." Mr. Sumner also refers to the following quotation from *People* v. *Pesky* (230 App. Div. 200, 203): " These matters must be judged by normal people and not by the abnormal. Conditions would be deplorable if abnormal people were permitted to regulate such matters." Mr. Sumner then says: " Substitute the word ' literati ' for ' abnormal people ' and we have an exact explanation of the letters, reviews, and other favorable comments presented in behalf of this book and its author."

Letters have been presented to this court praising the value of the book in question, from Mark Eisner, president of the board of higher education of the city of New York; Lewis Gannett of the New York *Herald-Tribune;* John Mason Brown, dramatic critic of the New York *Evening Post;* Sidonie M. Gruenberg of the Child Study Association of America; Solomon Lowenstein, executive and director of the Federation for the Support of Jewish Philanthropic Societies; Marc Connelly; Horace M. Kallen, honorary vice-president of the American Jewish Congress; Carl Van Doren, a distinguished literary critic; Herbert Bayard Swope, former editor of the New York *World;* J. Donald Adams, editor of the New York *Times Book Review*; Prof. Raymond Weaver, of the English department of Columbia University; Malcolm Cowley, one of the editors of the *New Republic;* Henry S. Canby, the veteran editor of the *Saturday Review of Literature;* Nathan Ottinger; Elmer Rice, playwright; John Cowper Powys; and finally Sinclair Lewis.

This court cannot subscribe to Mr. Sumner's opinion of the capacity for fair judgment of these leaders of American literary and educational thought. The court declines to believe that so large and representative a group of people would rally to the support of a book which they did not genuinely believe to be of importance and literary merit. The court is of the opinion, moreover, that this group of people, collectively, has a better capacity to judge of the value of a literary production than one who is more apt to search for obscene passages in a book than to regard the book as a whole.

This court has carefully read the book in question. It is an attempt at the portrayal, in a realistic fashion, of life as lived by an illiterate southern white farm family. A daughter of this family is married to a worker in a southern mill town. There is

inter-action between the run-down farm life and the mill-town life. Both on the farm and in the mill town the people are primitive and improverished. They are deprived of the opportunity for development, and their activities are largely sexual. They are of a simple nature, and savage passion is found close to the surface.

This court is not sufficiently familiar with conditions in the portion of the county described to say, at first hand, that the description is accurate. Nothing in this opinion is to be construed as an expression by the court as to whether or not the book is an accurate piece of reporting. As fiction, however, it contains internal evidence that it was written with a sincere attempt to present with truth and honesty a segment of life in the southern United States. The author has set out to paint a realistic picture. Such pictures necessarily contain certain details. Because these details relate to what is popularly called the sex side of life, portrayed with brutal frankness, the court may not say that the picture should not have been created at all. The language, too, is undoubtedly coarse and vulgar. The court may not require the author to put refined language into the mouths of primitive people.

The book as a whole is very clearly not a work of pornography. It is not necessary for the court to decide whether it is an important work of literature. Its subject-matter constitutes a legitimate field for literary effort and the treatment is also legitimate. The court must consider the book as a whole even though some paragraphs standing by themselves might be objectionable. "No work may be judged from a selection of such paragraphs alone. Printed by themselves they might, as a matter of law, come within the prohibition of the statute. So might a similar selection from Aristophanes or Chaucer or Boccaccio or even from the Bible. The book, however, must be considered broadly as a whole." (*Halsey* v. *N. Y. Society for the Suppression of Vice*, 234 N. Y. 1, at p. 4.) The test is whether "not in certain passages, but in its main purpose and construction" (*Halsey* v. *N. Y. Society for the Suppression of Vice*, 234 N. Y. 1, at p. 10), the book is obscene and lewd, and, therefore, violative of the statute.

The court holds that it is not. This is not a book where vice and lewdness are treated as virtues or which would tend to incite lustful desires in the normal mind. There is no way of anticipating its effect upon a disordered or diseased mind, and if the courts were to exclude books from sale merely because they might incite lust in disordered minds, our entire literature would very likely be reduced to a relatively small number of uninteresting and barren books. The greater part of the classics would certainly be excluded. In conclusion, " God's Little Acre " has no tendency

to inspire its readers to behave like its characters; therefore, it has no tendency to excite "lustful desire." Those who see the ugliness and not the beauty in a piece of work are unable to see the forest for the trees. I personally feel that the very suppression of books arouses curiosity and leads readers to endeavor to find licentiousness where none was intended. In this book, I believe the author has chosen to write what he believes to be the truth about a certain group in American life. To my way of thinking, *truth* should always be accepted as a justification for literature.

No complaint will be entertained against the defendants and the summons herein will be dismissed.