Louis I. Kaplan, J.
The defendant was charged with the violation of section 1141 of the Penal Law — which provides in part as follows: “ A person who sells, lends, gives away, distributes * * * any obscene, lewd, lascivious, filthy, indecent, sadistic, masochistic or disgusting book, magazine * * * Is guilty of a misdemeanor
The defendant was the sole and exclusive distributor for the magazine in question for the County of Richmond. The magazine was distributed to approximately 102 dealers over a period of 2 days. The defendant corporation uses the classification “ men’s Candids ” to embrace the type of magazine in question and it was conceded that defendant did not bother to look at the contents of such self-classified magazines prior to its distribution.
The primary question presented is whether the magazine is obscene.
The statute does not define obscenity or say what it is or prescribe any test to identify it. Such identity vests in the courts which through the years have construed and interpreted the words “ obscene ” and “ obscenity ” with their own ideas of what was or was not obscene in the literature before them.
In recent years, jurists have held and this court is in complete accord that an obscene publication is one wholly obscene and that in testing literature for obscenity it must be viewed in its entirety and only when and if the obscene contents constitute the dominant theme or effect of same does it fall within the forbidden class. (Roth v. United States, 354 U. S. 476; United States v. One Book Entitled Ulysses, 72 F. 2d 705; Parmelee v. United States, 113 F. 2d 729.)
Obscenity is an indefinable something in the minds of some and not in the minds of others, and it is different depending upon the individual’s taste, occasion, background and time. It is not the same today as it was yesterday or will be tomorrow. Nor is there unity in its definition. The word “ obscene ” is a word of common usage and is ordinarily used in the sense of meaning something offensive to the delicacy and purity of thought, something suggesting concupiscence, prurience and carnality.
In analyzing the contents of the magazine in issue, the following salient points were observed. It contains 16 articles, 8 of which are fiction, 7 of which are purported stories and pic- *1070 tuxes, and 1 satire. Of the 8 fiction articles, 3 are reprints by known authors and these total 10 pages. The remaining 5 fictional pieces total 20 pages and each of these 5 stories has as its basic theme erotic association or affiliated ideas in varying degrees. It is unnecessary to summarize them. The pictorial stories, to denominate them as essays would dignify it, cover 25 pages. The photographic and alleged art work comprise approximately 47 photographs, 22 of which show nude or partially nude women; 9 drawings, 3 of which show nude or partially nude women; 11 cartoons, 5 of which appear to be sexually suggestive. The magazine contains 68 pages.
Obscenity depends upon the character of the articles, photographs and cartoons, their number and sequence, the erotically suggestive character of the articles, photographs and cartoons, whether the motive of the articles, photographs and cartoons is pure or impure, whether they are calculated to excite in the readers moral, unchaste imaginations and whether the other incidents and qualities however admirable, are merely secondary to this as their main representation. (People v. Viking Press, 147 Misc. 813.) The publication is within the statute if it contains prohibited matter in such degree or of such nature as to season the whole and bestow upon the whole any of the attributes of obscenity. The problem is not the number of pages involved or the number of objectionable passages or the proportion they bear to the whole, but the impression likely to be created.
The magazine contains much that, even in the unstable moral equilibrium of the day, would tend to promote wanton thoughts and to arouse lustful desire in the minds of substantial numbers of that public into whose hands the magazine is likely to fall. The whole magazine is permeated with suggestiveness and innuendo and constitutes the dominant feature. The incidents integrated with the theme of the magazine are verbally portrayed and illustrated in .such a suggestive manner that the primary purpose appears to be licentiousness rather than the relation of facts or adequate descriptions of the incidents. No real message is conveyed by the magazine nor is it read for its literary or informative content. The theme is sex, indelicately treated and unrestrainedly emphasized. The contents are of such a character and so pervade the publication as to give the whole a sensual and licentious quality calculated to produce the harm the statute was intended to prevent.
No one finds fault with sex in its rightful place — it is a sublime part of life, but morally corrupt descriptions, illustrations and innuendo is the ultimate of obscenity.
*1071 The dominant note of this magazine is erotic allurement with no evident purpose but to invite perversity or erotomania. It flaunts the moral law which is the source of all law and lessens respect for decency and morality. “ Filth, however it may be bedizened or its grossness concealed, must remain filthy , in all ages.” (People v. Berg, 241 App. Div. 543, 545, affd. 269 N. Y. 514.)
It is the defendant’s argument that the information does not state a crime in that it fails to allege that they acted knowingly and that in any event there was no proof that they had any knowledge of the contents of the magazine, and that even if the magazine is obscene within the purview of the section, they are still not guilty of the crime, because there was no proof of actual knowledge of the contents of the publication or service of process upon it pursuant to section 22-a of the Code of Criminal Procedure.
This is a criminal charge to which the procedure under section 22-a is not a condition precedent. (People v. Richmond County News Co., 8 Misc 2d 162.) The criminal act complained of herein is malum prohibitum. Under that section, the only inquiry is “ has the law been violated?”
Section 1141 of the Penal Law was enacted for the purpose of protecting the morals of the People of this State. A casual inspection of the magazine would suffice if defendant had any interest in the public to put them on notice of the contents of the magazine. Under such circumstances, the defendant may not evade responsibility by closing its eyes to what should have been apparent.
‘ ‘ In none of the statutes enacted, or drafts submitted after 1865 was guilty knowledge made an element of the crime of selling or distributing indecent or obscene writings. * * * the omission of the words ‘ willfully and lewdly ’ from the statutes of 1868, 1872, 1873, section 317 of the Penal Code and section 1141 of the Penal Law, was deliberate and purposeful ’ ’. (People v. Shapiro, 6 A D 2d 271, 279-280.) The statute does not require that the act prohibited should be knowingly done. Public policy will not permit the lack of diligence or the absence of attentiveness to constitute a substantial defense. (People v. Werner, 174 N. Y. 132; People v. Boxer, 24 N. Y. S. 2d 628.)
The court cannot and must not close its eyes to the grave problem of juvenile delinquency, and while it is not unaware of the fact that the statute does not make fitness for juvenile reading the test for all literature regardless of its object, it cannot be supposed that the Legislature intended to give youth less protection than the community as a whole by the general *1072 proscription of that which is obscene. It cannot be seriously argued that this magazine normally finds its way into the corner stationery store where youth is wont to visit and where such magazine can be purchased or perused. Many adolescents are avid readers of that which smacks of salaciousness. I find that the magazine could tend to corrupt the morals of youth. It is the obligation of the court to protect the young as well as all other segments of the population from the corrupt influences exerted through the lascivious literature.
The information sufficiently charges a violation of section 1141 of the Penal Law. The defendant is found guilty as charged.
Cawse, Jr., J., concurs; Sabaeite, J., votes to convict without opinion.