Benjamin Gassman, P. J.
Because the issues of fact and law in each of the above four cases, tried separately, are the same, this decision will apply to each of these cases.
Each of the defendants is charged with a violation of section 1141 of the Penal Law, in that one of them had in his possession with intent to sell, and four of them did sell certain books, which will be more fully referred to later, and which books are alleged to be obscene.
In the Schenkman case, Detective Grünewald testified that on December 30, 1958 he entered a bookstore at 254 West 42nd Street, New York, which was managed by the defendant; that the defendant was at the cash register; that he saw on display in that store a number of books entitled “ Queen Bee ”; that he took the book over to the defendant, who told him the- price of the book was $5; that he gave the defendant $5 for that book and then placed him under arrest. He then saw 21 additional copies of that book, which he confiscated. He testified that the defendant told him that he sold those books to anyone who wanted to buy them.
In the Goldstein case, Police Officer Huger testified that on January 14,1959 he entered a bookstore at 598 Seventh Avenue, New York, of which the defendant was a co-owner and manager; that the defendant was in charge of the store at that time; that he saw on display in that store a number of books entitled “Succulent”; that the defendant sold him one copy of that book for $5, and that he then placed the defendant under arrest. He found six additional copies of that book in the store, and also six copies of a book entitled “Bloomer Boy”, which he confiscated. He asked the defendant whether he realized that the books were obscene, and the defendant said that he did not think the books were so bad.
*1095 In the Schaeffer case, Detective Dell testified that on December 30, 1958 he entered a bookstore at 225 West 42nd Street, which was managed by the defendant; that the defendant was then in charge of the store; that he saw on display in that store books entitled “ Garden of Evil ” and “ Queen Bee ”; that he took a copy of each of those books to the defendant, who told him that the price for each book was $5; that when the detective told him the price was too high, the defendant reduced the price to $9 for the two books; that he paid to the defendant the sum of $10 and received $1 change, and then placed him under arrest. He then seized 3 additional copies of each of those books and confiscated them.
In the Kleinberg and Finkelstein cases, Detective Dell testified that on December 30, 1958, he entered a bookstore at 251 West 42nd Street, New York, managed by the defendant Klein-berg, who was then at the cash register; that he saw on display at that store a number of books entiled “ Garden of Evil ” and ‘ ‘ Queen Bee ’ ’; that the defendant told him the price was $5 per book; that when he told the defendant it was too high, the defendant sold him both books for $9, and that he then placed the defendant under arrest. When he informed the defendant that the books were obscene, the defendant Kleinberg took out a medical book and read certain parts to him on sex and stated that the two books were not as bad. Detective Dell saw in the store 7 additional copies of “ Garden of Evil ” and 8 additional copies of “ Queen Bee ”, which he confiscated. Five minutes after the arrest of Kleinberg, defendant Finkelstein walked into the store. He told the detective that the store was his and that he knew those books were in the store for sale. He was then placed under arrest.
Each of the defendants rested at the end of the People’s case, and on their motions to dismiss the information, they urged (1) that the books were not obscene under the statute, and (2) that if it should be held that they were obscene, nevertheless the defendants could not be convicted for the reason that the People failed to establish scienter on their part, that is, knowledge of the contents of the books.
We shall consider each of these contentions.
Section 1141 of the Penal Law states in substance that ‘1 A person who sells, lends, gives away, distributes, * * * or has in his possession with intent to sell, lend, distribute * * * any obscene, lewd, lascivious, filthy, indecent, sadistic, masochistic or disgusting book, * * * Is guilty of a misdemeanor ’ ’. The section does not define any of those terms nor does it prescribe any test by which it may be determined when *1096 a book is obscene, leaving it to the courts to determine, as they did for years, whether any particular book comes within the prohibition of the statute.
In making such a determination, the court must view the book in its entirety. (Roth v. United States, 354 U. S. 476; Parmelee v. United States, 113 F. 2d 729.) The book cannot be judged from isolated portions of it, which, by themselves, might come within the prohibition of the statute, for if that were permitted, selections from Aristophanes or Chaucer or Boccaccio, or even from the Bible would fall under such prohibition. (Halsey v. New York Soc. For Suppression of Vice, 234 N. Y. 1, 4; United States v. One Book Called Ulysses, 72 F. 2d 705, 707.) The statutory proscription will be applied with great care and selectivity so as not to interfere with the circulation of legitimate works of literature, and the libidinous character of a challenged work will be determined by viewing it ‘ ‘ broadly as a whole”. (Halsey v. New York Soc. For Suppression of Vice, supra, p. 4; Brown v. Kingsley Books, 1 N Y 2d 177, 188.)
We recognize that “ There is no external measuring rod of obscenity. Neither, on the other hand, is its ascertainment a merely subjective reflection of the taste or moral outlook of individual jurors or individual judges. * * * It bears repetition that the determination of obscenity is for juror or judge not on the basis of his personal upbringing or restricted reflection or particular experience of life, but on the basis of ‘ contemporary community standards. ’ ” (Frankfurter, J., concurring, in Smith v. California, 361 U. S. 147, 165.) We are also aware of the fact that what may well have been consonant 11 with mid-Victorian morals, does not seem to me to answer to the understanding and morality of the present time,” (United States v. Kennerley, 209 F. 119, 120) and it is with these thoughts in mind that we pursued our inquiry as to whether the books in question are obscene. We have, of course, read those books.
In determining whether a book is obscene, the courts held that the meaning of the word “ obscene ” as legally defined, is “ Tending to stir the sex impulses or to lead to sexually impure and lustful thoughts.” (United States v. One Book Called “ Ulysses,” 5 F. Supp. 182, 184.) The judicial opinions use such key phrases as: “ suggesting lewd thoughts and exciting sensual desires ” (United States v. Dennett, 39 F. 2d 564, 568) ; “ arouse the salacity of the reader ” (United States v. Levine, 83 F. 2d 156,158); “ allowing or implanting * * * obscene, lewd, or lascivious thoughts or desires ” (Burstein v. United States, 178 F. 2d 665, 667); “ arousing sexual desires ” (American Civil Liberties Union v. City of Chicago, 3 Ill. 2d 334, 347).
*1097 Judged by the foregoing standards, no other conclusion can be reached but that each of the books before us is obscene. Each of those books was written not for literary merit, but rather, to exploit the morbid and shameful craving for lust with prurient effect. It shows a deliberate effort on the part of each author to pander to the lewd and lascivious minded for profit. These books have no place in literature and are not entitled to the protection which the First Amendment of the United States Constitution affords to works of literary distinction or to the classics. These books deal with sex in its most corrupt and degenerate form. They promote lust and portray filth for its own sake. Judged by contemporary community standards, each of those books is obscene under the statute, and we so hold.
The defendants, however, contend that even if the books are adjudged obscene, they still cannot be convicted of violating section 1141 of the Penal Law, in view of the recent decision of the United States Supreme Court in Smith v. California (supra). In the Smith case, the court struck down, as unconstitutional, a California statute, which made possession of an obscene or indecent book in any place where books are sold, an unlawful act, because the statute did not require scienter, i.e., knowledge by the defendant of the contents of the book, for the possession of which he was convicted. They urge (in the language of the court in the Smith case) that “ if the bookseller is criminally liable without knowledge of the contents, # * * he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature. * * * And the bookseller’s burden would become the public’s burden, for by restricting him the public’s access to reading matter would be restricted. If the contents of bookshops and periodical stands were restricted to material of which their proprietors had made an inspection, they might be depleted indeed. The bookseller’s limitation in the amount of reading material with which he could familiarize himself, and his timidity in the face of his absolute criminal liability, thus would tend to restrict the public’s access to forms of the printed word which the State could not constitutionally suppress directly.” (Smith v. California, supra, pp. 153-154.)
The defendants argue that in the cases before us, there is no evidence that the defendants read any of the books, and they therefore urge that the People have not established knowledge by the defendants of the contents of the books. We reject this argument. The testimony of the police officers as to the conver *1098 sations they had with the defendants, furnishes proof of knowledge by the defendants.
While it is true that, on cross-examination, the police officers stated that they did not see any of the defendants reading any of these four books, such proof was not absolutely essential to establish knowledge, if other proof is present. While the Smith case holds that knowledge of the contents of a book by a defendant is a necessary element in the case against him, it does not' hold that such knowledge may be established only by evidence that the defendant actually read the book. Other circumstances may establish such fact. Justice Breeeae, at page 154 in the Smith case, said: “ It is argued that unless the scienter requirement is dispensed with, regulation of the distribution of obscene material will be ineffective, as booksellers will falsely disclaim knowledge of their books’ contents or falsely deny reason to suspect their obscenity. We might observe that it has been some time now since the law viewed itself as impotent to explore the actual state of a man’s mind. * * * Eyewitness testimony of a bookseller’s perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial. ’ ’
The evidence before us discloses that each of these four books is a paper covered book. “ Queen Bee ” consists of 176 pages and the price ‘ ‘ $5.00 ’ ’ is stamped in large figures on the front cover. On the back cover, the following statement appears (as an inducement to the would-be buyer): “ The kind of book you always wished could be published. Nothing is hidden. * * * A tale that is wider and more sizzling than a barrel of sly French novels. A Roman orgy is tame compared to some of the bedroom scenes ”. “ Succulent ” consists of 60 pages. “ Garden of Evil ” consists of 94 pages and the price “ $5.00 ” is similarly printed in large figures on the front cover. On the back cover, it is urged that it is ‘ ‘ more exciting than ‘ Queen Bee ’ * * * more sensational than ‘ Stud Broad’ ”. “ Bloomer Boy ” consists of 94 pages. It is a well-known fact that book publishers, in recent years, resorted to publishing soft-covered books, in order to broaden the market and to sell them at less than a dollar, in some instances for as low as 25 cents per book, and thus to make the books available to those who could not afford to pay the price for a hard-covered book. Certainly the defendants possessed that knowledge. When, therefore, a paper-covered book is sold by a bookseller for $5, can it be .truthfully said that he did not know that the sale was induced by the fact that the book contained ‘ ‘ hard core *1099 pornography ” or, as Judge Woolsey referred to it in the Ulysses case, as “ dirt for dirt’s sake ” ? (5 F. Supp. 182, 184.)
We, therefore, find, as a fact, that the defendants had knowledge of the contents of the books.
A bookseller may not shut his eyes to something which he should see, nor shut his mind to something which he should know, for then the claimed lack of knowledge is sham and should not be permitted to defeat the purpose of a statute which seeks to outlaw traffic in obscene literature.
In his concurring opinion in the Smith case, Justice Frankfurter, at page 161, said: ‘ ‘ the Court is not holding that a bookseller must familiarize himself with the contents of every book in his shop. No less obviously, the Court does not hold that a bookseller who insulates himself against knowledge about an offending book is thereby free to maintain an emporium for smut. How much or how little awareness that a book may be found to be obscene suffices to establish scienter, or what kind of evidence may satisfy the how much or the how little, the Court leaves for another day.”
Continuing, on page 164, Justice Frankfurter said:
‘ ‘ A bookseller may, of course, be well aware of the nature of a book and its appeal without having, opened its cover, or, in any true sense, having knowledge of the book.”
“ The court cannot and must not close its eyes to the grave problem of juvenile delinquency, and while it is not unaware of the fact that the statute does not make fitness for juvenile reading the test for all literature regardless of its object, it cannot be supposed that the Legislature intended to give youth less protection than the community as a whole by the general proscription of that which is obscene.” (People v. Richmond County News, 13 Misc 2d 1068, 1071-1072 [Kaplan, J.].)
We accordingly conclude that the People have proven beyond a reasonable doubt the guilt of each of the five defendants.
Accordingly, the motions made by each of the defendants at the conclusion of the entire case, to dismiss the informations on the ground that the defendants’ guilt has not been established beyond a reasonable doubt, are denied, and each defendant is found guilty as charged in the informations.
Dunaif and Richman, JJ., concur.