Benjamin Gassman, J.
On December 29, 1959, police officers confiscated a number of books, alleged to be obscene, from a bookstore at 254 West 42nd Street, New York, known as Publishers’ Outlet. Those books were all identified and were later admitted in evidence. On January 12, 1960, police officers, armed with a search warrant, raided a basement in premises 37 West 20th Street, New York, and confiscated a number of books, alleged to be obscene, which books were identified and later *153 admitted in evidence. According to the testimony of one Norman Levenberg, who had a printing shop at 37 West 20th Street, those books were the property of the defendant. He testified that he printed those books at the request of the defendant ; that the defendant instructed him to deliver some of those books to Publishers’ Outlet, some to another store designated by the defendant, and the balance stored in room 908 of the said building. He testified further that the defendant gave him each month the money to cover the rental of that room; that in November, 1959, defendant told him that room 908 was under police surveillance and instructed him to move the books from that room, and that he thereupon made an arrangement with the superintendent of 37 West 20th Street for permission to use the basement for the storage of those books. He stated further that he removed the books from room 908 to the basement, where they were found and seized by the police. According to Levenberg, he paid about $600 to the superintendent for the use of that basement and that the defendant gave him about $200 of that amount.
On February 10, 1960, the police also confiscated three books, alleged to be obscene, from the Main Stem Book Store, at 1607 Broadway, New York. It is charg’ed that the defendant owned or had control of both the Publishers ’ Outlet and the Main Stem Book Store.
As a result of the testimony presented to the Grand Jury, and at the direction of the Grand Jury, the District Attorney filed an information, containing 198 counts, charging the defendant with the following:
Counts 1 to 62 inclusive, with possession with intent to sell, of a number of books described in the said counts, which are alleged to be obscene, lewd, lascivious, filthy, indecent, sadistic, masochistic and disgusting. At the outset of the trial, the People moved to dismiss counts 33, 34, 35, 36, 54, 55, 56 and 62, and they were dismissed.
Counts 63 to 110 inclusive, with publishing, manufacturing and preparing a number of books described in those counts, which are alleged to be within the proscription of subdivision 1 of section 1141 of the Penal Law. At the outset of the trial, the People moved to dismiss counts 94 and 105, and they were dismissed.
Counts 111 to 159 inclusive, with unlawfully hiring, employing, using and permitting other persons to design, print, utter, publish, manufacture and prepare a quantity of books described in those counts, which are alleged to be within the proscription of subdivision 1 of section 1141 of the Penal Law. At the outset *154 of the trial, the People moved to dismiss counts 143 and 154, and they were dismissed.
Counts 160 to 198 inclusive, with failing to imprint the true name and address of the publisher or printer on the books described in those counts, in violation of sections 330 and 331 of the General Business Law. At the outset of the trial, the People moved to dismiss counts 191 and 195, and they were dismissed.
The People called 22 witnesses and the defendant called two. We also have before us 94 exhibits offered by the People and one exhibit offered by the defendant. The 94 People’s exhibits included 54 books and 5 sets of cartoons. We read all of the books and cartoons.
Subdivision 1 of section 1141 of the Penal Law provides in substance that “ a person who sells * * * or has in his possession with intent to sell * * * obscene, lewd, lascivious, filthy, indecent, sadistic, masochistic or disgusting book * * * is guilty of a misdemeanor ”. That section uses the descriptive adjectives quoted above in addition to the adjective “obscene”, and it was held that all of those adjectives are synonymous with “ obscene ”. (People v. Brooklyn News Co., 12 Misc 2d 768, 771.)
The word “ obscene ” is derived from the Latin “ obsconus ”, meaning “filthy, repulsive ”. Webster’s Universal. Dictionary defines ‘ ‘ obscene ” as “ offensive to chastity and delicacy, impure, expressing or presenting to the mind or view something which delicacy, purity and decency forbid to be exposed.”
While each book must be viewed in its entirety, it does not mean that every page must be obscene for a book to be so judged. A book is obscene if it contains prohibited matter in such quantity or of such a nature as to flavor the whole and impart to the whole any of the qualities mentioned in the statute. The problem is to be solved, not by counting the pages, but rather by considering the impression likely to be created by them.
In Roth v. United States (354 U. S. 476) the court, at page 484, said: “ All ideas having even the slightest redeeming social importance — unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion — have the full protection of the guaranties, unless excludable because they encroach upon the limited area of more important interests. But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance ”. The court further held (p. 485) that “ obscenity is not within the area of constitutional protected speech or press ”. The test of obscenity, as laid down in the Roth case (p. 489), is *155 £ ‘ whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole, appeals to the prurient interest
Funk and Wagnalls New Standard Dictionary defines “ prurient ’ ’ as “ inclined to lecherous thoughts and desires While in recent times, some judicial opinions have been construed as holding that in these changing times former notions of propriety have, in many respects, been discarded, it is nevertheless true that ‘ ‘ there does emerge, somewhat hazily, the rule that an obscene book is one that ‘ tends to corrupt the morals of youth, ’ or ‘ to lower the standards of right and wrong specifically as to the sexual relation ’. To be deemed obscene it must show ‘ sexual impurity ’ and result in ‘ the exciting of lustful and lecherous thoughts and desires ’ or tend ‘ to stir sex impulses or to lead to sexually impure thoughts ’ (People v. Borg, 241 App. Div. 543, 544, affd. 269 N. Y. 514; People v. Larsen, 5 N. Y. S. 2d 55, 56; People v. Pesky, 230 App. Div. 200, affd. 254 N. Y. 373.)
While it is true that, in determining what is obscene, “ the law will not hold the crowd to the morality of saints and seers ” (Cabdozo, Paradoxes of Legal Science [1928 ed.], p. 37), yet if any book is “ calculated to appeal to the baser instincts of mankind ” it must be held to be violative of the statute. (People v. Fellerman, 243 App. Div. 64, 65, affd. 269 N. Y. 629.)
In writing the books before us, the respective authors made ‘ ‘ no attempt to point to any lesson that might be of value to any one that would read them. It was just a clear attempt to portray filthy ideas ”. (People v. Pesky, 230 App. Div. 200, 202.)
We accordingly hold that exhibits 1 to 32 inclusive, 43 to 64 inclusive, and 68 to 72 inclusive, come within the proscription of the statute. They lack literary merit. They teach no lesson and point no moral. The authors of those books have not become distinguished by their place in the literary world nor by the quality of their style of writing. They wrote those books on order from the defendant. One of them, in signing a contract for the sale of two of his manuscripts to the defendant stipulated therein that his name should not appear as the author of the books. Another testified that the defendant wanted her to write a book full of sex scenes — ‘ ‘ women making love to women, sodomy, lesbian scenes, spankings ’ ’. She testified that she never wrote any book on those subjects before and that defendant gave her some books he had to aid her in her research. A third, who wrote a large number of those books at defendant’s request, testified that in one instance, defendant gave him a *156 book and asked him to expand on it; that defendant told him he wanted “ wheels on female bodies and the darkening of flesh under flagellation”. Those books deal with sex in its most corrupt, sadistic, masochistic and degenerate form. They promote lust and portray filth for its own sake, or as Judge Woolsey called it in the Ulysses case (5 F. Supp. 182, 184) 11 dirt for dirt’s sake ”.
The language of the Appellate Division in People v. Pesky (230 App. Div. 200, 204) is quite appropriate to the situation before us. The court there said: “ These matters must be judged by normal people and not by the abnormal. Conditions would be deplorable if abnormal people were permitted to regulate such matters. Of course there are some people who seem to be unable to find anything obscene in anything written. It is very clear that the author of the book now before us for consideration was not thinking of the spiritual, but devoted the whole book to the animal instincts of the human race. His efforts were not a lesson in morality, nor an attempt to uplift the mind of the reader * * * While some people may think this quite smart, a book of this kind, which has nothing to recommend it, and dealing wholly with such details, is properly held to be disgusting, indecent and obscene.”
Having concluded therefore that the books described in the foregoing exhibits violate the statute, the question presented is whether the defendant’s connection with the publication, possession and hiring of others to assist him in the commission of the crime charged against him, has been established beyond a reasonable doubt. In the main, the testimony against the defendant was given by witnesses who, under the law, are deemed accomplicesl' However, we find that such testimony was amply corroborated by independent proof. It must be borne in mind that corroboration need not extend to every element of the crime charged. Testimony in corroboration as to some material fact is all that the law requires. (People v. Oglo, 104 N. Y. 511, 515; People v. Kress, 284 N. Y. 452, 460; People v. Swersky, 216 N. Y. 471, 480; People v. Patrick, 182 N. Y. 131, 157.) The evidence must be such as tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the triers of the facts that the accomplice is telling the truth. (People v. Crum, 272 N. Y. 348, 353; People v. Patrick, supra, p. 157; People v. Malizia, 4 N Y 2d. 22, 27; People v. Lashkowitz, 257 App. Div. 518; People v. Dixon, 231 N. Y. 111, 116, 117.)
We hold that there is sufficient' corroboration under the law of the testimony given by the accomplices as to the possession of the obscene books by the defendant with intent to sell them. *157 under subdivision 1 of section 1141 of the Penal Law, and as to his having hired others to assist him in the manufacture and sale of those books and other prints, under subdivision 2 of that section. We also find that the defendant had ample and full knowledge of the contents of those books, and that therefore, defendant’s guilt under the above two subdivisions has been established beyond a reasonable doubt. (People v. Finkelstein, 20 Misc 2d 1093, affd. 12 A D 2d 457.)
We also find that the evidence establishes beyond a reasonable doubt that the defendant knowingly violated the provisions of subdivision 1 of section 1141 of the Penal Law, which prohibits the publication of the books and prints declared obscene in section 1141.
We finally come to the counts of the information which charge the defendant with violating sections 330 and 331 of the General Business Law. Section 330 requires that every publication printed or reprinted in this State after September 1, 1956, shall have conspicuously imprinted on the cover, title, or copyright page or at the end of the publication the true name and address of the publisher or printer. Violation of that section is made a misdemeanor under section 331. These sections of the General Business Law are not limited to obscene publications only. The requirements apply to all publications in the State. The evidence before us discloses that when the defendant ordered the printing of the books in question, he either gave the printer a fictitious name and address of the publisher or instructed the printer to imprint any name and address he could think of, without regard to the true name and address of the publisher. This constitutes a violation of the cited sections of the General Business Law.
Accordingly, the motion made by the defendant at the conclusion of the trial to dismiss the information, is denied with respect to counts 1 to 32 inclusive; 37 to 53 inclusive; 57 to 61 inclusive; 63 to 65 inclusive; 67 to 87 inclusive; 89 to 93 inclusive ; 95 to 99 inclusive; 101 to 104 inclusive; 106 to 113 inclusive; 115 to 135 inclusive; 137 to 141 inclusive; 144 to 48 inclusive; 150 to 153 inclusive; 155 to 162 inclusive; 164 to 175 inclusive; 177 to 182 inclusive; 185 to 190 inclusive; 192, 193, and 196 to 198 inclusive, and the defendant is found guilty on each of the above counts.
The defendant’s motion is granted with respect to counts 66, 88, 100, 114, 136, 142, 149, 163, 176, 183, 184 and 194, and the defendant is acquitted on each of these counts.
Bbeslbñt, P. J., and Galloway, J., concur.