James Randall Creel, J.
While these cases were not tried together, the issues of law in each are the same, the facts are very similar, and these eases on prior trials and appeals have *772 been reported together. Hence, this decision will apply to each of these three eases.
Each of the defendants is charged in separate informations with violation of section 1141 of the Penal Law in that they did sell or have in their possession with the intent to sell certain specified books which are alleged to be obscene.
In the Finkelstein and the Schaeffer eases, which by stipulation were tried together, Detective Dell testified as to the defendant Schaeffer that on December 30, 1958, he entered a bookstore at 225 West 42nd Street, New York, which was managed by the defendant Schaeffer who was then in charge of the store, that he saw on display in that store books entitled “ Garden of Evil ” and “ Queen Bee ”, that he took a copy of each of these books to the defendant who told him the price of each book was $5, but upon protest that this price was too high the defendant reduced the price to $9 for the two books, which the detective paid and thereupon arrested the defendant. The detective searched the premises and under the counter and cash register found 70 additional copies of “ Garden of Evil”, and 40 copies of “ Queen Bee ”. In reply to questions by the detective this defendant stated, 1 ‘ I have seen much worse than these.”
In the case as to Finkelstein, Detective Dell testified that on December 30, 1958, he entered a bookstore at 251 West 42nd Street, New York, and saw on display a number of books entitled “Garden of Evil” and “ Queen Bee”, which were priced at $5 each but which were sold to the detective at the price of $9 for both. The detective had a conversation with the salesman, Kleinberg, a deceased defendant, who in response to an inquiry as to whether he had anything better, took out a medical book and read a passage therefrom to the officer who thereupon arrested this defendant. Within five minutes thereafter the defendant Finkelstein entered the store and admitted that he was the owner of the premises and admitted that the books “Queen Bee” and “Garden of Evil” were on the premises for sale. When informed of the officer’s opinion of the books, Finkelstein replied, “It all depends on how you look at it. I’ve seen much worse.” Finkelstein was then arrested. These premises were then searched and seven additional copies of “Queen Bee ” and seven additional copies of “Garden of Evil” were seized. Finkelstein admitted that the books all belonged to him and that he had them in the store for sale. He also admitted that he was the owner of the store at 225 West 42nd Street as well. Upon this testimony both sides rested, the defendants called no witnesses and based its defense *773 upon a' series of motions upon which the court reserved decision and requested briefs.
In the Goldstein case, Patrolman Ryan testified that on January 14, 1959, he entered a bookstore at 598 Seventh Avenue, New York, of which the defendant Goldstein was the admitted co-owner and manager and was in charge of the store at that time; that he saw a number of books entitled “Succulent”; that the defendant sold him a copy for $5, and that he then placed the defendant under arrest. He found six additional copies of that book in the store and also six copies of a book entitled “ Bloomer Boy ” under the counter on which the cash register was located and where the defendant had been standing. He asked the defendant whether he realized the hooks were obscene and the defendant said that he did not think the hooks were had. Both sides rested and the defendant made a series of motions upon which the court reserved decision and requested briefs.
On this retrial of these cases the evidence apparently is the same as on the earlier trials in this court before a different Bench. Upon the appeal from the convictions in the prior trials most of the defense motions made upon the retrial have been duly ruled upon by the appellate courts, and these decisions, of course, are the rule and the law of these cases. (People v. Finkelstein, 9 N Y 2d 342, revg. 12 A D 2d 457, which affd. 20 Misc 2d 1093.)
However, since the original trials and the appeals, there has been handed down the decision of the Court of Appeals in People v. Richmond County News (9 N Y 2d 578), and the defense counsel have strongly urg’ed that by the standard of obscenity therein set forth none of the four hooks which arc the exhibits in these cases are obscene. The exhibits have been read in the light of that controlling opinion and we find that each of the exhibits is, in fact, “hard-core pornography” as therein defined. The content of each book, objectively appraised, applying contemporary community standards, reveals that the dominant theme of the material and the whole tenor of the author’s intention was to appeal to none other than prurient interest — each book is sox for sex’ sake and sex alone, redundant, and replete with the morbid, perverse, unnatural, bizarre debauchery of sex.
Defendants’ motions for dismissal of the informations on the ground that section 1141 of the Penal Law of the State of New York is unconstitutional in that it violates the Fourteenth Amendment of the Constitution of the United States and section fi of article I of the New York State Constitution, and on *774 the ground that the informations are insufficient as a matter of law in that each count fails to allege the' defendants sold, offered to sell, or possessed with intent to sell books mentioned in each such count knowing that the said'books were obscene though phrased in the language of the statute, are denied since these motions have been ruled upon and determined heretofore on the appeal and these rulings are the rule of law of these cases.
Defense counsel have argued at length that the record does not contain evidence that the defendants had knowledge that the books were obscene. On the same or most similar testimony, another Bench of the court has decided this issue against the defendants. We respectfully refer to Justice Gassman’s opinion which deals with defendants’ knowledge on precisely the same evidence and exhibits and it is cogent, if not controlling, here. (People v. Schenkman, 20 Misc 2d 1093.) And the opinions of the appellate court appear also to have decided this question, at least to the extent that prima facie cases as to scienter have been proved, and that the convictions could, as a matter of law, properly be sustained in the absence of further evidence. This holding is implicit in the language of the majority opinion of the Court of Appeals: ‘ ‘ Although they can be charged ‘ with knowledge of the scope of subsequent interpretation ’ (Winters v. New York [333 U. S. 507] 514), we still feel that new trials are warranted by the circumstances and in the interests of justice, so that, although the People have the burden of proof, defendants may have an opportunity to testify or offer proof, if they desire, in regard to the presence of salacious literature in their possession for sale ” (pp. 345-346). In the minority opinion in the Court of Appeals it is expressly stated, “ there was sufficient evidence to support that finding” (scienter). (People v. Finkelstein, 9 N Y 2d 342, 349, supra.)
It should be noted, as indicated above, none of the defendants on the retrial availed themselves of “ the opportunity to litigate and explain the presence of salacious literature in their possession for sale.”
It is suggested that to acquiesce in the contention made in the briefs of defendants’ attorneys, namely, that under this statute it must be proved that a defendant read the book, knew the contents of the book, and knew that the contents were legally obscene, would, in fact, license the pornographer to ply his trade and peddle his wares with impugnity from the prohibitions and penalties of this statute. Even the most effi: cient of modern scientific police and investigative facilities could not reasonably be expected to produce such proof against pornographers who artfully and studiedly feign and affect ignor *775 nuce. To so hold would render the statute unenforcible and defeat the legislative intent. We believe that the case of Smith v. California (361 U. S. 147) which the defendants’ attorneys urged as supporting their contention, does not mandate such a well-nigh impossible standard of proof of scienter.
It is further suggested that these protestations of ignorance or lack of knowledge come with particularly bad grace from defendants who have failed to avail themselves, upon the retrial, of the opportunity of proving their lack of knowledge which was the express purpose for ordering the retrial. We find in each case that there is evidence of a calculated purveyance of pornography with that awareness or ken of content contemplated by section 1141 of the Penal Law.
The other contentions of defense counsel raised in their brief are likewise overruled and denied. One brief, for the first time, raised the issue of an illegal search and seizure of the book “ Bloomer Boy ”, which was seized as an incident to the arrest of one of the defendants, and asks for a hearing before a decision. This application is not timely or properly made, would serve no purpose since the seizure was of contraband incident to a lawful arrest, and is denied. It is also contended that the defendants are being prosecuted under an ex post facto law in violation of the Constitution of the United States in that the defendants are victims of a change in the expression of the law as well as a change in the rules of evidence as announced by the Court of Appeals after the alleged crime was committed. This contention is more ingenious than sound (Winters v. New York, 333 U. S. 507, 514), and seeks to convert a grant of grace into a bar to further prosecution.
Accordingly, the motions made by each of the defendants at the conclusion of the entire case and in their briefs to dismiss the information on the grounds that the defendants’ guilt has not been established beyond a reasonable doubt, are denied, and each defendant is found guilty as charged in the information.
Cullen, P. J., and Comereord, J., concur.