William ANDREWS, Appellant,

v.

The STATE of Texas, Appellee.

No. 701–82.

Court of Criminal Appeals of Texas, En Banc.

April 20, 1983.

On Rehearing June 22, 1983.

Darrell K. McAlexander, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft and Brad Beers, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

TEAGUE, Judge.

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW

The Legislature has made certain activities in obscenity the subject of criminal liability, and, with the exception of private possession for personal use, *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), the Federal constitution does not immunize those properly convicted from the sanctions imposed.

*Bryers v. State,* 480 S.W.2d 712, 716 (Tex. Cr.App.1972).

William Andrews, appellant, was accused by complaint and information with promoting obscenity by selling an obscene magazine, which was entitled "Swedish Erotica No. 25."

In pertinent part, the information alleges that appellant:

... did then and there unlawfully and knowing.the content and character of the material, intentionally sell to O.W. Farrell obscene material, namely one magazine entitled "SWEDISH EROTICA NO. 25" which depicts and describes patently offensive representations of actual and simulated sexual intercourse, anal intercourse and oral sodomy.

This alleges a violation of the Texas obscenity law. See V.T.C.A., Penal Code, Sec. 43.23(c). Also see Appendix "A," attached to this opinion, which contains all the provisions of subchapter B of Chapter 43 of the Penal Code, which constitutes the statutory law in Texas dealing with obscenity.

Appellant in the direct appeal did not challenge the sufficiency of the evidence. It is therefore adequate for our purposes to state that appellant, while employed as a clerk for a business establishment, Show and Tell Book Store, located at 900 Preston in Houston, in exchange for $6.89 sold O.W. Farrell a magazine entitled "Swedish Erotica No. 25." The record reflects that at the time Farrell purchased the magazine he was a Houston police officer engaged in undercover vice operations.

A jury found appellant guilty of the charged offense and the trial court assessed punishment at 3 days' confinement in the Harris county jail and a $750 fine. The Houston First Court of Appeals, see Andrews v. State, 639 S.W.2d 4 (Tex.App.– Houston [1st Dist.] 1982), reversed appellant's conviction because it found that the trial court, in the application paragraph of the charge to the jury, erroneously "assumed and established two essential facts: (1) that the magazine in question is 'obscene material,' and (2) that it depicts and describes 'patently offensive representations of actual or simulated sexual inter-

course, anal intercourse and oral sodomy.' " The Court of Appeals also held that the charge was additionally defective because (1) it failed to define the phrase "prurient interest in sex" and (2) the definition that was given in the charge for the term " 'patently offensive' ... permitted the jury to evaluate the magazine not as an expression which the community regards as intolerable, but as an expression which the community regards as being less than decent."

This Court granted the State's petition for discretionary review to evaluate the correctness of the holdings of the Court of Appeals. We will affirm in part and reverse in part the judgment of the Court of Appeals.

### THE APPLICATION PARAGRAPH OF THE CHARGE

The application paragraph of the charge provides as follows:

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, William Andrews, in Harris County, Texas, on or about the 7th day of August, 1980, did, knowing the content and character of the material, intentionally sell to O.W. Farrell obscene material, namely one magazine entitled 'Swedish Erotica No. 25' which depicts and describes patently offensive representations of actual or simulated sexual intercourse, anal intercourse and oral sodomy, then you will find the defendant guilty of the alleged offense.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

The Court of Appeals held that the application paragraph of the charge to the jury in this cause was defective because it "in effect, assume[d] as established two essential facts: (1) that the magazine in question is obscene material, and (2) that it depicts and describes 'patently offensive' representations of actual or simulated sexual intercourse, anal intercourse and oral sodomy." The Court of Appeals then concluded: "Thus, the court's charge may have erroneously led the jury to believe that it could

convict the appellant if it found he sold the magazine, even if it did not find the magazine to be obscene." We agree with the holdings and conclusion of the Court of Appeals.

After comparing the pertinent part of the information with the application paragraph of the charge, it becomes apparent that the trial court, in its preparation of the application paragraph of the jury charge, failed to give the subject adequate thought. When one considers the appellant's timely and proper objections, which were leveled at that portion of the charge, and which were the basis for the holdings of the Court of Appeals, it is difficult to understand why more time and thought were not put into this extremely important part of the charge. It is axiomatic that "If the trial court fails to correctly instruct the jury on the law and on the law as applied to the facts, the jury cannot perform its function of being the exclusive judge of the facts." *Doyle v. State,* 631 S.W.2d 732, 736 (Tex.Cr. App.1982) (On State's Motion for Rehearing). Also see *Jones v. State,* 611 S.W.2d 87 (Tex.Cr.App.1981); *Ex parte Kimberlin,* 594 S.W.2d 438 (Tex.Cr.App.1980).

 The application paragraph of the charge should be carefully and properly structured because it is usually the one paragraph of the charge which determines the guilt or innocence of the accused for committing the offense for which he is on trial. The general rule is that it is usually permissible to track the pertinent part of the charging instrument when preparing the application paragraph. However, such general rule is not absolute, especially where, as here, the application paragraph of the charge assumes certain disputed facts. Cf. *Grady v. State,* 634 S.W.2d 316 (Tex.Cr. App.1982). A trial court in its charge to a jury should never give the jury an instruction which constitutes a comment by the court on the elements of the alleged offense, or assumes a disputed fact, unless

such fact comes within an exception to the general rule of prohibition that is set out in *Marlow v. State,* 537 S.W.2d 8 (Tex.Cr.App. 1976).

 Although appellant did not dispute the authenticity of the magazine or its content, nevertheless, he made it an issue during the trial whether the magazine was obscene, as that term was defined in the abstract portion of the charge. In any criminal case, the State must prove the defendant's connection or relationship to the crime he is accused of committing. However, in an obscenity case, the State must further establish that the material alleged to be obscene depicts and describes "patently offensive" representations of actual or simulated sexual intercourse, anal intercourse or oral sodomy, before the material can be found to be obscene. In this instance, the jury was told by the trial court, in the application paragraph of the charge, that the magazine, "Swedish Erotica No. 25 depicts and describes *patently offensive representations* of actual or simulated sexual intercourse, anal intercourse and oral sodomy." (Emphasis Added). Although the magazine was a tangible object easily viewed by the jury, nevertheless, whether it was "patently offensive" is a subjective element not visible to the naked eye. The State had to prove this element of the offense beyond a reasonable doubt before a valid conviction could occur. As structured, we find that the application paragraph of the charge eliminated from the State's burden a key element of the offense it had to prove before a valid conviction could occur; that is, whether the magazine depicted and described patently offensive representations of actual or simulated sexual intercourse, anal intercourse and oral sodomy. The application paragraph was therefore subject to the appellant's objections and the trial court erred by not sustaining those objections.*

---

* A correct application paragraph would have read as follows:

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, William Andrews, in Harris County, Tex-

as, on or about the 7th day of August, 1980, did intentionally sell to O.W. Farrell one magazine, namely, "Swedish Erotica No. 25," and you further find beyond a reasonable doubt that when he sold the magazine, if you

## FAILURE OF THE TRIAL COURT TO DEFINE THE TERM "PRURIENT INTEREST"

█ The Court of Appeals also held that the trial court's failure to define the term "prurient interest" in the charge to the jury was subject to the objection appellant had made to such omission by way of a specially requested charge. The Court of Appeals concluded that because "The term 'prurient' is not common or widely used outside the context of obscenity cases, and the public may not be presumed to know its meaning," and because the term "has been interpreted by the courts and by our legislature," it was reversible error on the part of the trial court not to give appellant's requested instruction, which stated therein the definition for the term as contained in the former statute proscribing obscenity. We disagree with this holding.

The term, "prurient interest," is not defined in the present obscenity statute, although it was defined in the former penal statute which proscribed obscenity. See Acts 1973, 63rd Leg. p. 883, ch. 399, § 1, eff. January 1, 1974. In *Red Bluff Drive-In, Inc. v. Vance,* 648 F.2d 1020 (5th Cir.1981), cert. denied, 455 U.S. 913, 102 S.Ct. 1264, 71 L.Ed.2d 453 (1982), the Fifth Circuit, in judging the validity of the Texas obscenity statute, held that the lack of a statutory definition for the term, "prurient interest," did not render the statute constitutionally deficient.

The Court of Appeals, in reaching its above holding that the term "prurient interest" had to be specially defined in the court's charge to the jury, appears to have reasoned that because the term had been previously defined in the 1974 codification, it had acquired a technical meaning. Thus, the Court then concluded that a definition had to be given in the charge to the jury. The term, "prurient interest," may very

well have acquired a technical meaning in and outside the legal community. However, the mere fact that a word, term, or phrase has acquired a technical meaning in everyday or past usage does not mean that it must be defined in a court's charge to a jury in an obscenity case.

The Court of Appeals cited this Court's decision of *Porter v. State,* 60 Tex.Cr.R. 588, 132 S.W. 935 (Tex.Cr.App.1910), as authority for its holding. We think its reliance on *Porter,* Id., was misplaced. Prior to the enactment of the present Penal Code, in *assault* cases, this Court did occasionally hold that it was error not to define the term "serious bodily injury," if there was a question or issue concerning the nature of the victim's injuries. *Porter,* Id.; *Hays v. State,* 480 S.W.2d 635, 636 (Tex.Cr.App. 1972); *Bowman v. State,* 504 S.W.2d 880, 881 (Tex.Cr.App.1974). However, more often than not, it was held not to be error not to define the term, "serious bodily injury," because "The term 'serious bodily injury,' not being specially defined by statute, is used in its ordinary meaning." 4 *Branch's Ann. P.C.* (2d Ed.), Sec. 1750, at page 129.

We observe that the term "serious bodily injury" is now defined in the present Penal Code. See V.T.C.A., Penal Code, Sec. 1.07(34). Regardless of the holdings in the above cases, which had held that the term, "serious bodily injury," had to be defined in the court's charge to the jury, when the offense was an assaultive crime, we do not believe it is now necessary for us to concern ourselves with the continued viability of those cases.

Our research reveals that in the more recent past this Court has subscribed to the rule that if a word, term, or phrase had not at the time of trial been statutorily defined, there is no requirement to define that word, term, or phrase in the court's charge. Just recently, in *King v. State,* 553 S.W.2d 105

---

so find, he knew the content and character of the magazine, that is, he knew that the magazine depicts and describes patently offensive representations of actual and simulated sexual intercourse, anal intercourse or oral sodomy, if it does, and you further find beyond a reasonable doubt that the magazine is ob-

scene, as that term has hereinabove been defined, then you will find the defendant guilty.

If you do not so believe, or if you have a reasonable doubt thereof, then you will find the defendant not guilty.

(Tex.Cr.App.1977), a death penalty case, this Court held that such statutory terms as "deliberately," "probability," "criminal acts of violence," and "continuing threat to society," all of which unquestionably have acquired technical meanings, did not have to be defined in the charge to the jury, even in the face of an objection. Furthermore, in *Olveda v. State*, 650 S.W.2d 408 (Tex.Cr.App.1983), this Court held that it was not fundamental error to not define in a charge to the jury the term "in the course of committing theft," a key element of the offense of robbery, and which was the offense the defendant in that cause had allegedly committed. See V.T.C.A., Penal Code, Sec. 29.01(1).

Although it can be argued with merit that the Legislature should have included in the obscenity statute a precise definition for the term "prurient interest," nevertheless, we are unable to hold that the statute's failure to contain a definition for the term causes a jury charge to be subject to an objection for failure to define that term.

We observe that one student of the law, see Holcomb, "Texas' New Obscenity Laws: Redefining Taste," 17–2 *Houston Law Review* (1980), opined in footnote 128 of the article that the Legislature omitted a definition of the term "prurient interest," when it enacted the present obscenity statute, "because [the term] is essentially circular."

Art. 5429b–2, Sec. 2.01, V.A.C.S. (the Code Construction Act), provides that "Words and phrases shall be *read* in context and *construed* accordingly. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be *construed* accordingly." [Emphasis Added]. Also see Art. 3.01, V.A.C.C.P., which provides as follows: "Words, phrases and terms used in this Code are to be taken and understood in their usual acceptability in common language, except where specially defined." Also see *Milligan v. State*, 554 S.W.2d 192, 196 (Tex.Cr.App.1977); *Watson v. State*, 548 S.W.2d 676, 679, fn. 3 (Tex.Cr.App. 1977). As evidenced by the very wording of the above statutes, neither of them mandate nor require that if a word, term, or phrase has acquired a technical or particular meaning it must be so defined in a trial court's charge to the jury. Art. 5429b–2, supra, merely provides that such a word, term, or phrase shall be "construed accordingly." Under Art. 3.01, supra, words, terms, or phrases shall be "taken and understood in their usual acceptability in common language, *except where specially defined*." [Emphasis Added].

We have concluded that the debate over whether the term, "prurient interest," must be defined in the charge to a jury probably came into existence when the term was singled out from the whole charge for discussion. However, after carefully examining the charge in this cause as a whole, we find that the term, "prurient interest," should not be singled out, but, instead, accepted with reference to the context in which it was used in the charge and its relation to the other words, terms, and phrases found in the charge to the jury. In this instance, the jury was instructed in the abstract, inter alia, what the terms "obscene" and "patently offensive" statutorily mean. The term "prurient interest" is not contained either in the information or in the application paragraph of the trial court's charge. Only in the context of the definition of the word "obscene" does the phrase "prurient interest in sex" appear in the charge. Although there is nothing in the record of appeal to indicate that any juror in this cause had any difficulty with the meaning of the term, "prurient interest," nevertheless, we believe that if initially any juror in this cause had been unable to give the term "prurient interest" a correct meaning, such as an itching, a morbid or a lascivious interest in sex; or an unusual desire, curiosity, or propensity about sex, or "a loose-lipped sensual leer," see *Flying Eagle Publications, Inc. v. United States*, 273 F.2d 799, 803 (1st Cir.1960), or as describing one who is inclined to lecherous thoughts and desires, see *People v. Mishkin*, 207 N.Y.S.2d 390, 394, 26 Misc.2d 152 (N.Y. Ct.Sp.Sess.1960), or as used to describe a shameful or morbid interest in nudity, sex,

or excretion, see *Attorney General v. Book Named "John Cleland's Memoirs of a Woman of Pleasure,"* 206 N.E.2d 403, 405, 349 Mass. 69 (Mass.Sup.Jud.Ct.1965), or the like, by carefully reading and examining the whole charge, and considering the term in context, such juror would have arrived at a proper meaning of the term "prurient interest."

We also believe that the above comports with the general rule that when complaint is urged regarding a charge to the jury this Court reviews the charge as a whole and does not limit such review to parts of the charge standing alone. 12 A *Tex.Digest,* Crim.Law Key 822(1). Cf. *Doyle v. State,* supra.

Although it would not have been error had the trial court given a definition for the term, "prurient interest," nevertheless, we are unable to conclude that the lack of a definition for the term caused appellant to be denied and deprived of a fair and impartial trial by jury. Cf. *Ex parte Clark,* 597 S.W.2d 760 (Tex.Cr.App.1980).

It was therefore not error, much less reversible error, for the trial court not to have given a definition for the term. The trial court did not err in this regard. The State's contention in its petition for discretionary review is therefore sustained.

We furthermore hold that the absence of a definition for the term, "prurient interest," in the statute does not render the statute void for vagueness, nor does such omission violate either due process under the Federal Constitution or due course of law under the Texas Constitution. *Red Bluff Drive-In, Inc. v. Vance,* supra.

## WHAT IS WRONG WITH THE STATUTORY DEFINITION FOR THE TERM "PATENTLY OFFENSIVE"?

■ The term "patently offensive" is statutorily defined to mean the following: "so offensive on its face as to affront current community standards of *decency.*" [Emphasis Added]. V.T.C.A., Penal Code, Sec. 43.21(a)(4). The word "decency" is not defined in the penal code. As we previously stated, a word, term, or phrase which is not defined by statute is to be taken and understood in its usual acceptance in common and ordinary language and speech. Thus, the word "decency," which has not been specially defined by the Legislature, must be given its natural, ordinary, and familiar meaning.

The word "decent" has been defined to mean proper, becoming, fitting, or appropriate, with its antonyms being indecent, improper, indecorous, or unsuitable. Urdang, *A Basic Dictionary of Synonyms and Antonyms,* at page 87. The word "decency" has been defined to mean the following: "1. The state or condition of being decent; propriety. 2. Conformity to prevailing standards of propriety or modesty." 342 *The American Heritage Dictionary of the English Language* (1973 Edition); "perhaps a compliance with regard to notions of modesty or delicacy." 660 *Oxford English Dictionary* (1971 Edition). Thus, the word "decency," when used in ordinary and everyday speech, refers to that which is in conformity with what is socially acceptable behavior, speech, action, or the like.

As previously noted, the Court of Appeals in its opinion held that the charge given the jury in this cause was defective because the statutory definition given in the charge for the term "patently offensive" permitted the jury to evaluate the magazine, "Swedish Erotica No. 25," not as an expression which the community regards as *intolerable,* but as an expression which the community regards as being *less than decent.* The Court of Appeals stated the following:

> The court's charge in the case at bar improperly charged the jury that they might convict the appellant if they found the magazine in question was so offensive on its face as to affront current community standards of *decency.* This charge permitted the jury to evaluate the magazine not as an expression which the community regards as *intolerable,* but as an expression which the community regards as being *less than decent.* Thus, the court's definition was erroneous, and for the reasons previously stated, the court's

charge constituted reversible error. [Emphasis Added].

In making the above statement, the Court of Appeals undoubtedly relied upon the following language found in *Red Bluff Drive-In, Inc. v. Vance,* supra.

... the line between protected expression and punishable obscenity must be drawn at the limits of a community's tolerance rather than in accordance with the dangerous standards of propriety and taste.

We believe this in turn led it to make the following interpretation of the part of *Red Bluff Drive-In, Inc. v. Vance,* Id., which had discussed the constitutional validity of the definition for the term "patently offensive."

The Fifth Circuit has stated that a charge which instructs the jury to judge allegedly obscene material by standards of community decency, rather than of community tolerance, violates First Amendment guarantees of freedom of expression. *Red Bluff,* supra, citing *Smith v. U.S.,* 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977).

We totally disagree with the interpretation the Court of Appeals gave to that part of *Red Bluff Drive-In, Inc. v. Vance,* supra, which had discussed the term "patently offensive." The opinion of the Fifth Circuit *did not,* in its discussion of the term "patently offensive," make the holding the Court of Appeals attributes to it. Instead, the Fifth Circuit, on this point, only, and expressly, stated in its opinion that it was going to first leave the matter of interpreting the term "patently offensive" to the State courts. Anything else stated was dictum.

Furthermore, our reading of the decisions of the Supreme Court, which have construed obscenity laws, does not reflect that it has ever expressly mandated that the term or phrase "community standards of decency," which is used in the Texas statute, not be used in a State statute dealing with obscenity, nor has it ever mandated that the phrase, "community standards of tolerance," which is not used in the Texas

statute, be used in a State statute dealing with obscenity.

When the Legislature enacted the present Texas obscenity statute, it was attempting to comply with the Supreme Court decision of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

## MILLER V. CALIFORNIA

In *Miller,* Id., the Supreme Court held that printed material is not protected by the First Amendment to the United States Constitution if the material, when viewed as a whole, appeals to the prurient interest in sex, and the material portrays "Sexual conduct in a patently offensive way, in which, taken as a whole [does] not have serious literary, artistic, political, or scientific value." 413 U.S. at 24, 93 S.Ct. at 2614.

*Miller* established that the trier of fact must be guided by the following three part test:

(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest...; (b) whether the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value. *Id.* at 413 U.S. at 24, 93 S.Ct. at 2614.

The Supreme Court, however, did not in *Miller* address the "decency" versus "tolerance" issue, even though the trial court jury in that cause had been instructed to determine whether the material in that cause was "an affront to community standards of decency." Our reading of *Miller* leads us to conclude that the omission from the opinion of any discussion of the issue was done intentionally and not just as a mere oversight on the part of the Court.

The former test for obscenity, enunciated by the Supreme Court in *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), was whether, to the average person applying contemporary

community standards, the dominant theme of the material in question, taken as a whole, appealed to prurient interest. Thus, the emphasis under *Roth* was upon the content of the material and not simply *identification* of what the material depicted or described. The Supreme Court in *Miller* held that the *Roth* test was unsatisfactory and unacceptable.

It is obvious to us that the test formulated by the *Miller* Court, see supra, places emphasis on *identifying* the material which depicts or describes ultimate sexual acts and not on whether the dominant theme of the content of the material is utterly without redeeming social value. Thus, it is the *identification* of material that now becomes important, and not the value of the material, except that the material, regardless of what its content may depict or describe, must, when taken as a whole, lack serious literary, artistic, political or scientific value.

In its quest to adopt or formulate a new and more workable and suitable standard for proscribing obscenity, which is not constitutionally protected by the First Amendment, see *Roth v. United States,* Id.; *Miller v. California,* supra, 413 U.S. at 23, 93 S.Ct. at 2614, 37 L.Ed. at 430, it is apparent to us that the Supreme Court took cognizance of many commonly accepted facts of life. We believe that the Supreme Court recognized that to various degrees sexually explicit material is allowed to co-exist in many communities in the United States side by side with other forms of perhaps more bland material, and implicitly concluded that sexually explicit material may not be acceptable in some communities but in others it may be tolerated. However, we also believe that the Court recognized that merely because such material is tolerated in one community does not necessarily mean that such material is acceptable to the average person in that community when applying contemporary community standards. The Supreme Court thus recognized that the average person of a community in one State, in applying contemporary community standards of his community, might find certain material to be patently offensive, but it also recognized

that the average person in a community of another State might find the material either acceptable, or at a minimum capable of being tolerated. We believe that this is the reason the Supreme Court did not mandate that a national standard be imposed on a local community, but, instead, opted for the average person-contemporary community standard test to be part of the ultimate test. The Court emphasized the following in its opinion: persons of one State of the Union are not required to accept "public depiction of conduct found tolerable in another State of the Union but intolerable in the former State." *Miller,* Id., 413 U.S. at 32, 93 S.Ct. at 2619, 37 L.Ed.2d at 435. "People in different States vary in their tastes and attitudes, and this diversity is not to be strangled by the absolutism of imposed uniformity." *Miller,* Id., 413 U.S. at 33, 93 S.Ct. at 2620, 37 L.Ed.2d at 436. We believe the Court, in using "the average person," standard, makes the contemporary or current community standard portion of the test the backdrop against which the jury identifies the material and measures questions of appeal to the prurient interest in sex and what may constitute patent offensiveness.

As previously noted, when the Legislature of this State enacted the present obscenity statute, it was attempting to satisfy the new test announced by the Supreme Court in *Miller.* In doing so, it defined "patently offensive" to mean "so offensive on its face as to affront current community standards of decency." We believe this is in accordance with *Miller's* holding. In applying its test, we do not believe that the Supreme Court wanted a jury to simply hold everything that could be construed as questionably obscene material to be obscenity, but, instead, required that before material could be held obscene, it had to be patently offensive to the average person, applying current community standards, or, to put it another way, the Supreme Court conferred on the trier of fact, who was to be guided by "the safeguards that judges, rules of evidence, [the] presumption of innocence, and other [such] protective features [provide]," *Miller,* supra, 413 U.S. at 26, 93

S.Ct. at 2616, the right to make the first determination of *identifying* the material. Therefore, the right to make the first determination, that is, whether the average person, applying contemporary community standards, would find that the material was facially offensive, and whether, according to contemporary community standards, the material appealed to the prurient interest in sex, was left to the trier of fact.

We do not believe that the Supreme Court desired for the States, in enacting obscenity laws, to be placed in a straightjacket as to how their statutes would read, provided that they did not conflict with its decision. Thus, we believe that is the reason it did not mandate the use of the "tolerance" standard and did not mandate the non-use of the "decency" standard. Furthermore, as easily seen by the wording of the Texas statute, see Appendix "A," which is attached to this opinion, the statute is not phrased in either the affirmative or the negative as to what is indecent or what may be tolerated, but, instead, the term "patently offensive" is defined to mean "so offensive on its face as to affront current community standards of decency," in order to give guidance to the trier of fact in *identifying* the material. We acknowledge that in the abstract there may be a meaningful distinction between such terms and phrases as "standards of decency" and "standards of tolerance." However, our concern does not encompass the abstract meaning of those terms or phrases, but instead, the reality of construing a word that has been placed in the definition of a term or phrase.

We also believe that what has caused some confusion is the taking of words, terms, or phrases, giving them a meaning, and then discussing their application in the abstract. However, "like words found in a *dictionary*, the true and correct meaning of legal words and terms is not shown until they are properly used in a sentence, i.e., until they are applied." *Doyle v. State*, supra, at page 737.

As previously stated, the Legislature defined the term "patently offensive" as it did in order to guide and assist a juror in *identifying* whether material alleged to be obscene was in fact obscene. However, there is more meaning to the definition than the inclusion of the word "decency," when one considers what must be proved under the Texas statute before material can be found to be legally obscene.

For material to be obscene under the Texas statute, the trier of fact must be convinced beyond a reasonable doubt that each of the following elements have been established by the prosecution:

(1) the average person, applying contemporary community standards, would find that taken as a whole the material alleged to be obscene appeals to prurient interest in sex; (2) the average person, applying current community standards of decency, would find that facially the material is so offensive that it is not decent; (3) the average person would find that facially the material depicts or describes representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, which ultimate sexual acts include but are not limited to sexual intercourse, sodomy, and sexual bestiality, or the average person would find that facially the material depicts or describes representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; *and* (4) *regardless* of what may be socially acceptable to the average person or what the contemporary community standards of propriety may be to the average person in the community, the material, taken as a whole, must lack serious literary, artistic, political, and scientific value.

Compare the above with what was stated in *United States v. Bagnell*, 679 F.2d 826, 835 (11th Cir.1982). If the trier of fact answers each of the above elements in the affirmative, the material has been identified-it is ob-

scene in that particular community. This Court has not yet set a maximum geographical boundary for "the community," instead holding that the geographical standard is not limited to a county-wide standard. *La Rue v. State,* 637 S.W.2d 934 (Tex.Cr.App.1982); *Berg v. State,* 599 S.W.2d 802 (Tex.Cr.App. 1980); *Graham v. State,* 620 S.W.2d 133 (Tex.Cr.App.1981).

As previously noted, the word "decency" commonly refers to compliance with standards of conduct and behavior which are generally accepted in society as being proper. In construing an obscenity law, without more, this meaning would be totally unacceptable in light of the First Amendment, because current standards of socially desirable conduct may mean one thing to one person and another thing to another person, *Hall v. State,* 5 A.2d 916, 176 Md. 488 (Md.Ct.App.1939), or, to put it another way, what may be regarded as indecent by one person may not be thus regarded by another person. *Universal Film Mfg. Co. v. Bell,* 167 N.Y.S. 124, 100 Misc. 281 (N.Y.Sup.Ct. 1917). And that is why we believe that the Supreme Court opted for the average person standard.

In context of what may become obscene under the Texas obscenity statute, and in light of the desire of the *Miller* Court to have the trier of fact make the first *identification* of whether what is alleged to be obscene is in fact obscene material, we find that the word "decency" takes on a more significant meaning than merely referring to socially desirable and acceptable conduct or behavior. As previously stated, the Texas statute actually has a four part test, with the statute mandating that each part must be established beyond a reasonable doubt before a valid conviction may result. The answer to whether the use of the word "decency," in the statutory definition of the term "patently offensive," causes the definition to be constitutionally defective lies not in deciding whether one may approve, respect, accept, or tolerate what is alleged to be obscene material, but, instead, lies in resolving the question of what will be identified by the average person, using contemporary community standards, as being ob-

scene. The trier of fact is also, under the *Miller* test, supra, given the responsibility of deciding in the first instance whether the material lacks serious literary, artistic, political, and scientific value, without regard to the average person-contemporary community standards test. Thus, whether "tolerance" is an element of "decency" is not the deciding factor in resolving the issue, just as whether a standard could be formulated encompassing the word "tolerance," rather than "decency," is irrelevant and immaterial to the issue. The questions are whether the Texas statute provides sufficient guidance to the trier of fact to identify the material, and whether, in doing so, it violates the Constitution of the United States of America.

■ We conclude that the statutory definition for the term "patently offensive" passes constitutional muster because in context within the statute, the word "decency" actually states a common meaning of what governs "current community standards," i.e., whether to the average person the material, which material must depict or describe in a patently offensive way ultimate sexual acts, is so offensive on its face as to affront current community standards of propriety.

It must not be forgotten that in identifying what is under the protective wings of the First Amendment, we look to see *what is not* protected by the Amendment; not *what is protected* by the Amendment. Books, magazines, films, underground newspapers, and similar material are presumptively protected by the First Amendment. *Gitlow v. New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed.2d 1138 (1925). However, not all that is printed or spoken is protected by the First Amendment, and the Supreme Court has often stated that "Obscenity is not within the area of protected speech or press." *Miller v. California,* supra. The *Miller* Court has fixed substantive constitutional limitations on the type of printed material which may be subject to control and regulation by the States. In doing so, and as part of its ultimate test, it

applies the "average person-contemporary community standards" test. We believe that what this test means is that it calls upon the trier of fact to identify what material, to the average person, using contemporary community standards, is obscene. The word "decent" merely serves as a guide for the trier of fact to use in making that determination.

However, we hasten to add that even though the trier of fact has identified the material as being obscene, this does not necessarily end the matter. A convicted defendant will, of course, have the right to appeal his conviction and challenge the sufficiency of the finding of the trier of fact. It is also incumbent upon appellate courts to further make the independent determination whether the material is constitutionally obscene. The ultimate and final authority to decide whether material or a performance is constitutionally obscene rests with the Supreme Court of the United States. E.g., *Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974).

We therefore hold that the Texas obscenity statute is not unconstitutional because the statutory term "patently offensive" is defined in terms of a community standard of decency. The statute is neither vague nor overbroad because of this fact. The statute, by its terms, clearly states that only in an indirect manner of speaking will the terms "decency" or "tolerance" come into play when the trier of fact decides whether the material is obscene. In an obscenity case, tried under the Texas statute, the juror's personal beliefs regarding what is acceptable, tolerable, intolerable, indecent, decent, and the like are irrelevant and immaterial, because the juror decides the issue through the eyes and mind of the average person. In doing so, the juror actually is deciding what to the average person in his community is obscene. The definition for the term "patently offensive" is not therefore constitutionally deficient under *Miller v. California,* supra.

The judgment of the Court of Appeals is reversed on this point. All decisions of Courts of Appeals holding to the contrary are overruled.

## THE QUESTION IS NOT WHETHER WE KNOW IT WHEN WE SEE IT, BUT, INSTEAD, IS THE ALLEGED OBSCENE MATERIAL PROTECTED BY THE FIRST AMENDMENT

Justice Potter Stewart, a former member of the Supreme Court, in his concurring opinion in *Jacobellis v. Ohio,* 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), made the following comment:

I have reached the conclusion, which I think is confirmed at least by negative implication in the Court's decisions since *Roth [v. United States] and Alberts [v. California,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) ], that under the First and Fourteenth Amendments *criminal laws in this area are constitutionally limited to hard-core pornography.* I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. *But I know it when I see it, and the motion picture involved in this case is not that.* 378 U.S. at [184] 197, 84 S.Ct. at [1676] 1683. (Emphasis Added).

The Supreme Court held in *Jacobellis,* after its members viewed the entire French film "Les Amants" ("The Lovers"), that "in the light of the record made in the trial court," the film "is not obscene within the standards enunciated in *Roth v. United States* and *Alberts v. California,* supra."

## APPELLATE COURTS OF THIS STATE MUST MAKE THE INDEPENDENT DETERMINATION WHETHER WHAT IS ALLEGED TO BE OBSCENE MATERIAL IS CONSTITUTIONALLY OBSCENE MATERIAL

Because of the supremacy clause of the Federal Constitution, see Art. III, *United States Constitution,* members of this Court are, as are members of any State court in this Nation, bound to adhere and follow the decisions of the Supreme Court of the Unit-

ed States, to the extent that they set minimum constitutional standards concerning the Bill of Rights of the Federal Constitution, which are applicable to the States through the Fourteenth Amendment. Because we find that the Supreme Court has presently stated sufficient minimum constitutional standards governing obscenity, we decline to set lower standards pursuant to the Texas Constitution, although this Court has the power to do so. See, e.g., *Houston Chronicle Publishing Co. v. Shaver,* 630 S.W.2d 927, 928 (Tex.Cr.App.1982); *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

■ We will therefore follow the decisions of the Supreme Court governing the law of obscenity. The test set forth above for obscenity under *Miller v. California,* supra, is a Federal constitutional test. However, its application is not left to the unbridled discretion of the trier of the fact. An appellate court is obligated to make an independent review of the material in question and an independent evaluation of the material in light of the *Miller* criteria to make the determination whether the material is constitutionally obscene.

The Supreme Court decision of *Jacobellis,* supra, which preceded *Miller v. California,* supra, thus becomes important, not because of its holding that the French film involved in that cause, "Les Amants" ("The Lovers"), was not constitutionally obscene, but because of what Justice Brennan, who wrote the opinion for the Court, stated therein. In discussing the responsibility of an appellate court, in making the independent determination whether what is alleged to be obscene material is constitutionally obscene, Justice Brennan stated the following, without limitation, restriction, or qualification: "[W]e reaffirm the principle that, in 'obscenity' cases as in all others involving rights derived from the First Amendment guarantees of free expression, this Court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." 378 U.S. at 190, 84 S.Ct. at 1679.

Recently, in *Jenkins v. Georgia,* supra, the Supreme Court held that the film "Carnal Knowledge" is not constitutionally obscene. In doing so, it *sua sponte* viewed the entire film, thus implicitly reaffirming what it had stated in *Jacobellis,* regarding independent review by an appellate court. In fact, Justice Brennan, in his concurring opinion in *Jenkins,* stated the following, which we believe is a correct interpretation of what the Supreme Court now mandates that appellate courts, such as this Court, must do:

> After the Court's decision today, there can be no doubt that *Miller* [*v. California*] requires appellate courts—including this Court—to review independently the constitutional fact of obscenity...

In accordance with past decisions of the Supreme Court, this Court has long subscribed to the "independent review" rule of law. In *Longoria v. State,* 479 S.W.2d 689, 690 (Tex.Cr.1972), this Court stated the following, without limitation, restriction, or qualification: "It is necessary that the record contain sufficient evidence for this Court to make its own independent determination [whether the material is obscene]." In *Hunt, et al. v. State,* 475 S.W.2d 935, 936 (Tex.Cr.App.1972), this Court made the following statement, without limitation, restriction, or qualification: "Notwithstanding a jury verdict finding the magazines 'obscene' ... it is incumbent on this court to make its own independent judgment."

■ Therefore, under the decisions of the Supreme Court and this Court, in an obscenity case, where the defendant pleads not guilty and trial is to a jury or the court, but the defendant is found guilty and appeals his conviction, it is now incumbent upon intermediate appellate courts of this State, as we must do when such a conviction is properly before us, to make the independent determination whether the material that is alleged to be obscene is constitutionally obscene.

■ However, the appellant does not make a challenge that the content of the

magazine, "Swedish Erotica No. 25," did not depict and describe patently offensive representations of actual and simulated sexual intercourse, anal intercourse and oral sodomy. Nor does he challenge the sufficiency of the evidence to show his connection or relationship to the sale of the magazine. Nor does he challenge the sufficiency of the evidence that he knew the content and character of the magazine. It is therefore not necessary for us to make an independent review of the evidence to decide whether it is sufficient to sustain the implicit findings the trier of fact in this cause made against the appellant. Nevertheless, we have done so and find the evidence clearly sufficient to sustain the verdict finding appellant guilty.

■ An appellate court, though it may not be required to review the sufficiency of the evidence, must, nevertheless, make the independent determination of whether the material is constitutionally obscene, i.e., whether the material advocates or communicates any ideas or opinions concerning serious literary, artistic, political, or scientific values.

OUR INDEPENDENT CONCLUSION: WE NOT ONLY KNOW IT WHEN WE SEE IT, BUT THE MAGAZINE, "SWEDISH EROTICA NO. 25," IS CONSTITUTIONALLY OBSCENE

■ The appellant did not urge in the appeal to the Court of Appeals that the magazine, "Swedish Erotica No. 25," was not in the usual or constitutional sense obscene. Nevertheless, fulfilling our constitutional responsibility as mandated by the Supreme Court, see supra, we have reviewed the entire magazine.

The magazine, "Swedish Erotica No. 25," is not just another vulgar, tawdry, or unpleasant magazine. Without detailing what the content of the magazine reflects, depicts, portrays, or reveals, we believe it is sufficient to state that the members of this Court have been subjected, through photographs, with what may be called "background text," to nothing less than the most vivid portrayal of actual or simulated ultimate sexual acts which can be contemporaneously engaged in between one male and one female or between one male and two females. Nothing has been left to our respective imaginations as to what anatomical positions human beings may assume when engaging in mutual or "menage a trois" sexual behavior. However, as to human sexuality in general, see Kinsey, Pomeroy, and Martin, *Sexual Behavior in the Human Male* (1948); *Sexual Behavior in the Human Female* (1953).

The magazine, "Swedish Erotica No. 25," does not advocate or communicate any ideas or opinions concerning serious literary, artistic, political, or scientific values. We conclude that the average person, applying *any* contemporary community standards in this State, would find that taken as a whole the magazine would only appeal to those who have a prurient interest in sex. The magazine depicts or describes patently offensive representations or descriptions of ultimate sexual acts. We conclude without question or any reservations that this magazine represents commercial obscenity or hard core pornography, and is unfettered by any pretense of being anything else. *Sharp v. State,* 495 S.W.2d 906 (Tex.Cr.App.1973); *Miller v. California,* supra. The magazine, "Swedish Erotica No. 25," is constitutionally obscene.

The judgment of the Court of Appeals is reversed in part, and affirmed in part, and the cause is remanded to the trial court.

ONION, P.J., and CLINTON, J., concur in the result.

APPENDIX "A"

SUBCHAPTER B. OBSCENITY

§ 43.21. Definitions

(a) In this subchapter:

(1) "Obscene" means material or a performance that:

(A) the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;

(B) depicts or describes:

(i) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or

(ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; and

(C) taken as a whole, lacks serious literary, artistic, political, and scientific value.

(2) "Material" means anything tangible that is capable of being used or adapted to arouse interest, whether through the medium of reading, observation, sound, or in any other manner, but does not include an actual three dimensional obscene device.

(3) "Performance" means a play, motion picture, dance, or other exhibition performed before an audience.

(4) "Patently offensive" means so offensive on its face as to affront current community standards of decency.

(5) "Promote" means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same.

(6) "Wholesale promote" means to manufacture, issue, sell, provide, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, or to offer or agree to do the same for purpose of resale.

(7) "Obscene device" means a device including a dildo or artificial vagina, designed or marketed as useful primarily for the stimulation of human genital organs.

(b) If any of the depictions or descriptions of sexual conduct described in this section are declared by a court of competent jurisdiction to be unlawfully included herein, this declaration shall not invalidate this section as to other patently offensive sexual conduct included herein.

[Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974. Amended by Acts 1975, 64th Leg., p. 372, ch. 163, § 1, eff. Sept. 1, 1975; Acts 1979, 66th Leg., p. 1974, ch. 778, § 1, eff. Sept. 1, 1979.]

Sections 3 and 4 of the 1979 amendatory act provided:

"Sec. 3. If any portion of this Act is declared unlawful by a court of competent jurisdiction, this declaration does not invalidate any other portions of this Act.

"Sec. 4. This Act applies only to offenses committed on or after its effective date. A criminal action for an offense committed before this Act's effective date is governed by the law in existence before the effective date of this Act, and Sections 43.-21 and 43.23, Penal Code, as in existence before the effective date of this Act, are continued in effect for this purpose as if this Act were not in effect. For the purpose of this section, an offense is committed before the effective date of this Act if any element of the offense is committed before the effective date."

§ 43.22. Obscene Display or Distribution

(a) A person commits an offense if he intentionally or knowingly displays or distributes an obscene photograph, drawing, or similar visual representation or other obscene material and is reckless about whether a person is present who will be offended or alarmed by the display or distribution.

(b) An offense under this section is a Class C misdemeanor.

[Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974.]

§ 43.23. Obscenity

(a) A person commits an offense if, knowing its content and character, he wholesale promotes or possesses with intent to wholesale promote any obscene material or obscene device.

(b) An offense under Subsection (a) of this section is a felony of the third degree.

(c) A person commits an offense if, knowing its content and character, he:

(1) promotes or possesses with intent to promote any obscene material or obscene device; or

(2) produces, presents, or directs an obscene performance or participates in a portion thereof that is obscene or that contributes to its obscenity.

(d) An offense under Subsection (c) of this section is a Class A misdemeanor.

(e) A person who promotes or wholesale promotes obscene material or an obscene device or possesses the same with intent to promote or wholesale promote it in the course of his business is presumed to do so with knowledge of its content and character.

(f) A person who possesses six or more obscene devices or identical or similar obscene articles is presumed to possess them with intent to promote the same.

(g) This section does not apply to a person who possesses or distributes obscene material or obscene devices or participates in conduct otherwise prescribed by this section when the possession, participation, or conduct occurs in the course of law enforcement activities.

[Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974. Amended by Acts 1979, 66th Leg., p. 1975, ch. 778, § 2, eff. Sept. 1, 1979.]

Sections 3 and 4 of the 1979 amendatory act provided:

"Sec. 3. If any portion of this Act is declared unlawful by a court of competent jurisdiction, this declaration does not invalidate any other portions of this Act.

"Sec. 4. This Act applies only to offenses committed on or after its effective date. A criminal action for an offense committed before this Act's effective date is governed by the law in existence before the effective date of this Act, and Sections 43.-21 and 43.23, Penal Code, as in existence before the effective date of this Act, are continued in effect for this purpose as if this Act were not in effect. For the purpose of this section, an offense is committed before the effective date of this Act if any element of the offense is committed before the effective date."

§ 43.24. Sale, Distribution, or Display of Harmful Material to Minor

(a) For purposes of this section:

(1) "Minor" means an individual younger than 17 years.

(2) "Harmful material" means material whose dominant theme taken as a whole:

(A) appeals to the prurient interest of a minor, in sex, nudity, or excretion;

(B) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and

(C) is utterly without redeeming social value for minors.

(b) A person commits an offense if, knowing that the material is harmful:

(1) and knowing the person is a minor, he sells, distributes, exhibits, or possesses for sale, distribution, or exhibition to a minor harmful material;

(2) he displays harmful material and is reckless about whether a minor is present who will be offended or alarmed by the display; or

(3) he hires, employs, or uses a minor to do or accomplish or assist in doing or accomplishing any of the acts prohibited in Subsection (b)(1) or (b)(2) of this section.

(c) It is a defense to prosecution under this section that:

(1) the sale, distribution, or exhibition was by a person having scientific, educational, governmental, or other similar justification; or

(2) the sale, distribution, or exhibition was to a minor who was accompanied by a consenting parent, guardian, or spouse.

(d) An offense under this section is a Class A misdemeanor unless it is committed under Subsection (b)(3) of this section in which event it is a felony of the third degree.

[Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974.]

§ 43.25. Sexual Performance By a Child

(a) In this section:

(1) "Sexual performance" means any performance or part thereof that includes sexual conduct by a child younger than 17 years of age.

(2) "Obscene sexual performance" means any performance that includes sexual conduct by a child younger than 17 years of age of any material that is obscene, as that term is defined by Section 43.21 of this code.

(3) "Sexual conduct" means actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals.

(4) "Performance" means any play, motion picture, photograph, dance, or other visual representation that is exhibited before an audience.

(5) "Promote" means to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise or to offer or agree to do any of the above.

(6) "Simulated" means the explicit depiction of sexual conduct that creates the appearance of actual sexual conduct and during which the persons engaging in the conduct exhibit any uncovered portion of the breasts, genitals, or buttocks.

(7) "Deviate sexual intercourse" has the meaning defined by Section 43.01 of this code.

(8) "Sado-masochistic abuse" has the meaning defined by Section 43.24 of this code.

(b) A person commits an offense if, knowing the character and content thereof, he employs, authorizes, or induces a child younger than 17 years of age to engage in a sexual performance. A parent or legal guardian or custodian of a child younger than 17 years of age commits an offense if he consents to the participation by the child in a sexual performance.

(c) An offense under Subsection (b) of this section is a felony of the second degree.

(d) A person commits an offense if, knowing the character and content of the material, he produces, directs, or promotes an obscene performance that includes sexual conduct by a child younger than 17 years of age.

(e) A person commits an offense if, knowing the character and content of the material, he produces, directs, or promotes a performance that includes sexual conduct by a child younger than 17 years of age.

(f) An offense under Subsection (d) or (e) of this section is a felony of the third degree.

(g) It is an affirmative defense to a prosecution under this section that the defendant, in good faith, reasonably believed that the person who engaged in the sexual conduct was 17 years of age or older.

(h) When it becomes necessary for the purposes of this section to determine whether a child who participated in sexual conduct was younger than 17 years of age, the court or jury may make this determination by any of the following methods:

(1) personal inspection of the child;

(2) inspection of the photograph or motion picture that shows the child engaging in the sexual performance;

(3) oral testimony by a witness to the sexual performance as to the age of the child based on the child's appearance at the time;

(4) expert medical testimony based on the appearance of the child engaging in the sexual performance; or

(5) any other method authorized by law or by the rules of evidence at common law.

[Added by Acts 1977, 65th Leg., p. 1035, ch. 381, § 1, eff. June 10, 1977. Amended by Acts 1979, 66th Leg., p. 1976, ch. 779, § 1, eff. Sept. 1, 1979.]

Section 2 of the 1979 amendatory act provided:

"This Act applies only to offenses committed on or after its effective date. A criminal action for an offense committed

before this Act's effective date is governed by the law in existence when the offense was committed, and Section 43.25, Penal Code, as in existence before the effective date of this Act, is continued in effect for this purpose as if this Act were not in effect. For the purpose of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date."

## ON APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR REHEARING

CLINTON, Judge.

We have been obliged to revisit *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) in order to review, discuss and decide some issues raised in this and more or less companion causes. One contention defying final disposition is that somehow the definition of "patently offensive" in V.T.C.A. Penal Code, § 43.21(a)(4) —"so offensive on its face as to affront *current community standards of decency*" [1] —is *passe,* and the underscored phrase must now be supplanted by "current community standards of *tolerance.*" *Miller* does not hold that.[2]

In *Miller* the Supreme Court did observe: "It is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found *tolerable* in Las Vegas or New York City." *Id.,* 413 U.S. at 32, 93 S.Ct. at 2619.

Then, in *Smith v. United States,* 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977), after reprising the "three part test" of *Miller,* the Supreme Court stated that it makes clear that "contemporary community standards take on meaning only when they are considered with reference to the underlying questions of fact that must be resolved in an obscenity case," *id.,* 431 U.S. at 300, 97

S.Ct. at 1763. Just as appeal to prurient interest is one such question of fact, so "patently offensive is to be treated in the same way," *id.,* 431 U.S. at 301, 97 S.Ct. at 1764. Turning to the federal issue before the Court, in the course of its discussion about standards, the opinion recalls its earlier holdings that 18 U.S.Ct. § 1461 embodies an application of local rather than national standards and "[s]imilarly, obscenity is to be judged according to the average person in the community, rather than the most *tolerant* or the most prudish," *id.,* 431 U.S. at 304, 97 S.Ct. at 1766. Then in that part of the opinion usually excerpted by proponents of the school of "tolerance" the Supreme Court said:

"Our decision that contemporary community standards must be applied by juries in accordance with their own understanding of the *tolerance* of the average person in their community does not mean, as has been suggested, that obscenity convictions will be virtually unreviewable. We have stressed before that juries must be instructed properly, so that they consider the entire community and not simply their own subjective reactions, or the reactions of a sensitive or of a callous minority." *Id.,* 431 U.S. at 306, 97 S.Ct. at 1766.

Lastly, a footnote observation in the opinion of the Supreme Court in *New York v. Ferber,* —— U.S. ——, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) has caught the eyes of some. After reiterating the thought expressed in *Miller*—that people in Las Vegas may not be permitted to set standards in Maine and Mississippi, see *ante*—Jusitce White adds, "It would be equally unrealistic to equate a community's *toleration* for sexually oriented material with the permissible scope of legislation aimed at protecting children from sexual exploitation." *Id.,* 102 S.Ct. at 3357, n. 12.

In our judgment none of the foregoing statements, observations or remarks by the

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. Indeed, the charge implicitly approved in *Miller* instructed the jury to apply contemporary standards of the State of California in determining whether the material "appeals to the prurient interest" and whether the material "goes beyond customary limits of candor and affronts contemporary standards of decency," *id.,* 413 U.S. at 31, 93 S.Ct. at 2618.

Supreme Court was intended or designed to define current community standards of obscenity in terms of tolerance, as still contended.[3] And one *can* make much too much of such expressions. See *Red Bluff Drive-In, Inc. v. Vance,* 648 F.2d 1020 (CA5 1981), cert. denied 455 U.S. 913, 102 S.Ct. 1264, 71 L.Ed.2d 453 (1982).

But to put the argument to rest, we now hold that when a properly instructed jury in this State renders a verdict of guilty reflecting its conclusion that the material at issue is obscene, it has found the material exceeds the limits of what the community tolerates. That is, rearranging somewhat the order of statutory factors, the jury has:

> first determined that facial content of the material insults (*affronts*) current community standards of decency to the point of being patently offensive to the average person in the community;

> then, after examining the whole of the material, concluded that the average person, applying contemporary community standards,[4] would find the material arouses (*appeals to*) such a shameful or morbid interest in sex as to be prurient;[5]

> and finally, decided that the material in its entirety was without important (*serious*) literary, artistic, political or scientific value in the community.

So construed, the guilty verdict means the material on trial is obscene beyond the limits of tolerance of the community.

With these observations and comments, we deny the motion for leave to file a motion for rehearing.

---

3. In *Smith v. United States,* supra, the Supreme Court opined that it would be "inappropriate for a legislature ... to try to define the contemporary community standard of appeal to prurient interest or patently offensiveness, *if it were even possible for such a definition to be formulated,*" *id.,* 431 U.S. at 302, 97 S.Ct. at 1764.

4. As used here the phrase is not couched in terms of "decency," nor in its charge did the trial court limit the jury to what it might consider "indecent."

5. Previously defined by the Legislature, prurient interest in sex may be "a shameful or morbid interest in nudity, sex, or excretion..." See former § 43.21(3).