**Kenneth Alan YORKO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–83–0517–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

March 6, 1986.

Michael A. Maness, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Timothy G. Taft, Vance Christopher Farris County Asst. Dist. Attys., Houston, for appellee.

Before EVANS, C.J., and WARREN and LEVY, JJ.

## OPINION

EVANS, Chief Justice.

The appellant was charged by information with selling an obscene magazine. After a trial before the court, he was found guilty and his punishment assessed at a fine of $350.

On appeal to this Court, we ordered the appellant's conviction reversed and the cause remanded for a new trial, deciding that the State had failed to prove that the appellant sold the material knowing its content and character to be obscene. The Court of Criminal Appeals, on its own motion, granted discretionary review, and held that the evidence was sufficient to support the conviction. Accordingly, the Court of Criminal Appeals reversed this Court's judgment and remanded the cause to this Court for consideration of the appellant's remaining grounds of error. *Yorko v. State*, 699 S.W.2d 224 (Tex.Crim.App., 1985).

In his first ground of error, the appellant contends that Texas Penal Code sections 43.21 and 43.23 are unconstitutional under the first and fourteenth amendments of the United States Constitution because they define community standards for judging obscenity in terms of community standards of "decency" rather than community standards of "tolerance." This ground of error is overruled. *Andrews v. State*, 652 S.W.2d 370, 377–82 (Tex.Crim. App.1983).

In his second and third grounds of error, the appellant contends that his conviction must be reversed because the material that he sold is neither constitutionally nor factually obscene.

As stated in the opinion of the Court of Criminal Appeals, the magazine in question was introduced into evidence without objection. The magazine, which depicts acts of sexual intercourse, oral sodomy, and other sexual activity, is clearly obscene within the statutory definition. Viewing the contents of the magazine, and the stipulated evidence in a light most favorable to the judgment, we find the material to be both factually and constitutionally obscene. We overrule the appellant's second and third grounds of error.

The appellant's fourth and last ground of error has been duly considered and rejected by the above-mentioned decision of the Court of Criminal Appeals.

The judgment of the trial court is affirmed.

LEVY, Justice, concurring.

Reconsidering the appellant's other grounds of error in compliance with the remand order from the Court of Criminal Appeals, I regretfully cannot agree unqualifiedly with the majority's disposition of appellant's first ground. He argues therein that section 43.21(a)(4) of the Texas Penal Code is unconstitutionally vague on its face by defining "patently offensive" as "so offensive on its face as to affront current community standards of decency." By operation of section 43.21(a)(4), written materials claimed by the State to be "obscene" must be "patently offensive" within that meaning, and the charging instrument incorporated that element in the accusation against the appellant.

The question at issue, as I see it, is not whether obscenity is utterance within the area of protected speech—Texas courts have consistently assumed that obscenity is *not* protected by the First Amendment[1]—but, rather, what is the constitutional test of "obscenity"? Section 43.21(a)(4) attempts to answer this inquiry with the concept that the challenged material must "affront current community standards of decency."

Rarely, if ever, has such an amorphous and opaque phrase, attempting to set a statutory standard of conduct and warn against transgression, been submitted for adjudication. Obviously, what is a "decent" standard to some people may be "indecent" to others—and thus be so imprecise as to specify no standard of conduct at all. As a result, "men of common intelligence must necessarily guess at its meaning." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). The phrase is not only unconstitutionally vague because it subjects the exercise of the right of communication to an unascertainable standard; it is also unconstitutionally broad because it authorizes or even threatens the punishment of constitutionally protected communication. A statutory denunciation so predicated on "indecency" cannot properly be the basis for abridgement of the constitutional freedom of speech; it is much too vague and simply does not provide fair and adequate notice of the conduct prohibited. Sustaining such a standard would establish a precedent fraught with potential disaster in the form of curtailment of free and robust discussion.[2]

But the intense difficulty in formulating a useful and constitutionally acceptable standard has not persuaded the United States Supreme Court that such a standard is ineffable. We are admonished by the Court of Criminal Appeals in *Andrews v. State,* 652 S.W.2d 370, 379 (Tex.Crim.App. 1983), that the *Roth* test of obscenity, *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), has been supplanted by *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), which emphasizes the identification of material describing ultimate sexual acts and not whether the dominant theme of the material is without social value:

> [I]t is the *identification* of material that now becomes important, and not the value of the material, except that the material, regardless of what its content may depict or describe, must, when taken as a whole, lack serious literary, artistic, political or scientific value.

*Andrews v. State,* 652 S.W.2d at 379.

Cultural variance was noted by the Supreme Court in observing that persons in State "A" are not required to accept "public depiction of (sexual) conduct" simply because it may be tolerable in State "B":

> People in different States vary in their tastes and attitudes, and this diversity is

---

1. *See Hoyle v. State,* 672 S.W.2d 233 (Tex.Crim. App.1984); *Shealy v. State,* 675 S.W.2d 215 (Tex. Crim.App.1984); *Hall v. State,* 661 S.W.2d 101 (Tex.Crim.App.1983) (per curiam) (Teague, J. concurring); *Davis v. State,* 658 S.W.2d 572 (Tex.Crim.App.1983).

2. For a brief but specific description of historical blunders generated by a desire to eliminate "the obscene" from public view or consideration, see the concurring opinion in *Southwick v. State,* 701 S.W.2d 927, 931 (Tex.App.—Houston [1st Dist.] 1985, no pet.).

not to be strangled by the absolutism of imposed uniformity.

*Miller*, 413 U.S. at 33, 93 S.Ct. at 2620.

We are, of course, bound to follow the holdings of the Court of Criminal Appeals, even when we have the most serious personal reservations concerning the soundness and logic of a particular opinion. I must, however, record my doubts that "the word 'decency' actually states a common meaning of what governs 'current community standards,' i.e., whether to the average person the (subject) material ... is so offensive on its face as to affront current community standards of propriety." *Andrews*, 652 S.W.2d at 381. Nor can I agree personally with the *Andrews* holding that "the Texas obscenity statute is not unconstitutional because the statutory term 'patently offensive' is defined in terms of a community standard of decency." *Id.* at 382.

Fortunately, the law requires *every* appellate court independently to protect the First Amendment, notwithstanding a jury verdict finding of obscenity:

> [W]e reaffirm the principle that, in 'obscenity' cases as in all others involving rights derived from the First Amendment guarantees of free expression, this Court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected.

*Jacobellis v. Ohio*, 378 U.S. 184, 190, 84 S.Ct. 1676, 1679, 12 L.Ed.2d 793 (1964) (footnote omitted); *see also Jenkins v. Georgia*, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974); *Hunt v. State*, 475 S.W.2d 935 (Tex.Crim.App.1972).

Turning to the magazine in question, it is immediately offensive, being both tawdry and dehumanizing to an appalling level. To claim that it has any value—literary or aesthetic—is absurd. It is obviously designed only to titillate, to appeal to the prurient interest of an immature or morbid mind. But while recognizing the existence of a problem with obscenity, we are not required to sustain any and all measures adopted to meet that problem. Prosecuting a sales clerk who is employed to sell such trash, knowingly or unknowingly, is not going to solve the problem, or approach its sources, or even inhibit the publication. And a vexatious question remains: if a magazine, a painting, or a literary gem arouses a lustful thought, is it constitutionally "obscene" even though it may have serious artistic or literary value, *taken as a whole?*

As I said in the *Southwick* case, I would like to give the broad sweep of the First Amendment full support, because in a democratic society we must have confidence in our people to reject noxious literature as well as in their capacity to distinguish between the true and the false, and the good and the bad, in philosophy, literature, art, theology, politics, economics, or any other field. When we start relying on the State to make these distinctions for us, the First Amendment—and our intellectual vitality—are drastically impaired.

Ultimately, the State should be concerned with antisocial *conduct* in its penal code, not with utterances or lascivious thoughts. The law must draw a distinction between a criminal act and yielding to personal fantasies.

Were it not for the *Andrews* opinion, I would sustain the appellant's first ground of error. But under the present state of the law, I have no choice except to shout into the wind, by way of this concurring opinion.