**T.K.'S VIDEO, INC., Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–92–386–CR.**

Court of Appeals of Texas,
Fort Worth.

Jan. 25, 1994.

Rehearing Overruled April 5, 1994.

Malcolm Dade, Dallas, for appellant.

Bruce Isaacks, Crim. Dist. Atty., Jim E. Crouch, Asst. Crim. Dist. Atty., Denton, for appellee.

Before LATTIMORE, DAY and FARRAR, JJ.

## OPINION

LATTIMORE, Justice.

Appellant, T.K.'s Video, Inc. ("T.K.'s"), was convicted by a jury of the offense of promotion of obscenity. TEX.PENAL CODE ANN. § 43.23(c) (Vernon 1989). The court assessed punishment at a fine of $10,000. On appeal, T.K.'s raises three points of error contending that: (1) there is insufficient evidence to sustain a conviction; (2) the trial court erred in submitting the charge to the jury with the wrong community standard; and (3) the State engaged in improper jury argument.

We affirm.

Deputy Brown of the Denton County Sheriff's Office entered T.K.'s Video Store while working undercover and purchased a magazine, entitled "Overload," depicting homosexual intercourse. T.K.'s was charged by information with promotion of obscene material, which "depicts and describes patently offensive representations and descriptions of oral and anal deviate sexual intercourse." During the State's case-in-chief, Officer Brown and Officer Elrod testified about the layout and contents of the store. Officer Brown further testified about the circumstances of the magazine purchase, and stated his opinion that the average hypothetical adult Texan, applying Texas community standards, would find that the magazine appeals to the prurient

interest in sex. T.K.'s did not call any witnesses, but moved for an instructed verdict at the conclusion of the State's case based on three grounds: (1) the State offered insufficient evidence to establish what the contemporary community standards of the average adult male homosexual are as applied to the prurient appeal prong of the obscenity test; (2) the State failed to present evidence by expert testimony as to what is or is not acceptable to the homosexual community with regard to the magazine and its prurient appeal; and (3) the State offered no evidence as to what a lay person who has studied the homosexual community of the State of Texas feels about such a magazine. The court overruled the motion for instructed verdict.

In its first point of error, T.K.'s complains that there is insufficient evidence to sustain a conviction because no evidence was introduced that the magazine, which was admittedly primarily designed and disseminated for a sexually deviant group, was unacceptable to the members of that deviate group. Under this point, T.K.'s asserts the State failed to prove its case-in-chief because it did not put on any evidence about whether a homosexual would find the magazine obscene. T.K.'s urges that since the magazine was prepared for and marketed to homosexuals, the State had to present some evidence concerning how homosexuals would view it.

■ The magazine itself was introduced into evidence, and the jury could have made its obscenity determination based on that evidence alone. *See Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 56, 93 S.Ct. 2628, 2634, 37 L.Ed.2d 446, 456 (1973) (the materials themselves are the best evidence of obscenity). Moreover, expert testimony is not required to prove materials are obscene if the materials themselves are introduced into evidence. *See id.; Goodwin v. State,* 514 S.W.2d 942, 945 (Tex.Crim.App.1974). In the case of hard core pornography intended to appeal to a particular deviant audience, generally it is not necessary that the jury have an understanding of that group's interests, prurient or otherwise; the pornography speaks for itself. *See United States v. Thomas,* 613 F.2d 787, 790–91 n. 2, 793–94 (10th Cir.) (child pornography), *cert. denied,*

449 U.S. 888, 101 S.Ct. 245, 66 L.Ed.2d 114 (1980); *United States v. Young,* 465 F.2d 1096, 1098–99 (9th Cir.1972) (graphic detailing of heterosexual intercourse, fellatio, cunnilingus, anal intercourse, sodomy, masturbation, and oral-anal contact); *United States v. Wild,* 422 F.2d 34, 36 (2d Cir.1969) (homosexual materials), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971).

■ The *Paris Adult Theatre* Court noted that obscenity is not a subject that lends itself to the use of traditional expert testimony, which is usually admitted to explain to lay jurors what they could not otherwise understand. *Paris Adult Theatre I,* 413 U.S. at 56 n. 6, 93 S.Ct. at 2634 n. 6, 37 L.Ed.2d at 456 n. 6. Jurors in obscenity cases need no such assistance unless the contested materials are directed at such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate from which to judge whether the materials appeal to the prurient interest. *Id.*

■ T.K.'s cites *United States v. Klaw,* 350 F.2d 155 (2d Cir.1965) to support its assertion that expert testimony was required in the instant case. The material in *Klaw* consisted of items related to "bondage." *Id.* at 157. In reviewing the defendant's challenge to the sufficiency of the evidence, the court stated, "if proof of prurient stimulation and response is generally important, it is particularly necessary when the prurient interest may be that of a deviant segment of society *whose reactions are hardly a matter of common knowledge." Id.* at 166 (emphasis added).

The magazine in this case was marketed to individuals interested in homosexual intercourse. The magazine depicts, by photos and textual material, explicit sexual acts between homosexuals. T.K.'s cannot seriously argue that this magazine is intended to induce reactions that "are hardly a matter of common knowledge." The experience of the jury rendered it more than adequate to judge whether the magazine appealed to the prurient interest. *See United States v. Petrov,* 747 F.2d 824, 836 (2d Cir.1984), *cert. denied,* 471 U.S. 1025, 105 S.Ct. 2037, 85 L.Ed.2d 318 (1985) (*"United States v. Klaw,* 350 F.2d 155

(2d Cir.1965), is properly understood to require expert testimony that material appeals to the prurient interest of a deviant group only when the material portrays conduct not generally understood to be sexual.") (Newman, J., dissenting in part). Because we hold the magazine itself is evidence sufficient to support T.K.'s conviction, we overrule T.K.'s first point of error.

T.K.'s complains in its second point of error that the trial court erred in submitting the charge to the jury using the wrong standard of proof. The submitted charge read as follows:

> You are further instructed that in determining the contemporary community standards, you may consider any evidence presented during the trial of this case of community standards over the entire State of Texas and rely on your own knowledge of the views and sense of the average person in arriving at your determination of contemporary community standards.

> In determining whether or not the material, if any, at issue is obscene, the jury must first determine whether or not the content of the material affronts contemporary community standards of decency to the point of being patently offensive to the average person in the community. Next, after examining the whole of the material, you must determine whether or not the average person applying contemporary community standards would find the material appeals to a prurient interest in sex as previously defined. And finally, the jury must determine whether or not a reasonable person would find the material, taken as a whole, lacks serious literary, artistic, political and scientific value. If these three tests for the determination of wheth-

er or not the material, if any, at issue is obscene are present in the material beyond a reasonable doubt, then you may find the material, if any, to be obscene; otherwise, if any one of these three tests is not present in the material beyond a reasonable doubt, the material, if any, is not obscene under our law.

T.K.'s made the following objection to the court's charge:

> Number fourteen ... I would object to the Court's charge because it does not charge the jury that the contemporary community standard is to be determined by whether or not the material is or is not acceptable to the average adult male homosexual in Texas as in applying the prurient appeal portion of the test.

The State argues that the trial court was correct in overruling appellant's jury charge objections, because the charge included a definition of "prurient interest" which stated that "[i]f it appears from the character of the material or the circumstances of its dissemination that the subject matter is designed for a specially susceptible audience, such as homosexuals, the appeal of the subject matter shall be judged with reference to such susceptible audience."

■■■ T.K.'s argues that the refused instructions were necessary because materials aimed at sexually deviant groups cannot be judged by what appeals to the prurient interest of the average person. T.K.'s argument is grounded upon a misinterpretation of the contemporary community standards test for obscenity. *See Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419, 431 (1973);[1] *Andrews v. State,* 652 S.W.2d 370, 380 (Tex.Crim.App.1983).[2] Under both

1. The federal test for obscenity is: (1) whether the average person, applying contemporary community standards, would find the work, taken as a whole, appeals to the prurient interest; (2) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *Miller,* 413 U.S. at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 431.

2. The Texas test for obscenity is somewhat stricter than the federal test:

(1) the average person, applying contemporary community standards, would find that taken as a whole the material alleged to be obscene appeals to prurient interest in sex;
(2) the average person, applying current community standards of decency, would find that facially the material is so offensive that it is not decent;
(3) the average person would find that facially the material depicts or describes representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, which ultimate sexual acts include but are not limited to sexual intercourse, sodomy, and sex-

state and federal law, a jury is permitted to draw upon knowledge of the community and decide whether the *average* person, applying community standards, would find the materials in question obscene. *See Hamling v. United States*, 418 U.S. 87, 105, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590, 613 (1974); *Andrews*, 652 S.W.2d at 380.

T.K.'s mistakenly relies on *Mishkin v. New York*, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966) as support for its position. In that case, the appellant argued that materials depicting deviant sexual practices do not satisfy the prurient-appeal requirement because they "disgust and sicken" the average person instead of appealing to him. *Id.* at 508, 86 S.Ct. at 963, 16 L.Ed.2d at 62. The Supreme Court rejected this argument and stated, "[w]here the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-appeal requirement ... is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group." *Id.*

We do not read *Mishkin* to require a special jury instruction whenever there is evidence that obscene materials may attract a sexually deviant group. Rather, *Mishkin* merely stands for the proposition that materials targeting deviant groups are not beyond the scope of the obscenity laws just because they appeal to the prurient interest of a sexual deviant rather than the average adult.

If we followed T.K.'s argument in a case involving the obscenity of materials portraying adults engaged in sexual intercourse with children, the trial court would be required to instruct the jury that prurient interest would be defined from the viewpoint of the average pedophile. *See United States v. Guglielmi*, 819 F.2d 451, 455 (4th Cir.1987) (trial court

in bestiality case involving obscene films was not required to ask the jury to find whether there was such a thing as an average zoophile and the appeal of the films to such a person), *cert. denied*, 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988).

Because we find the trial court properly instructed the jury on which standard of proof to apply, we overrule T.K.'s second point of error.

In the third point of error, T.K.'s asserts that the State engaged in improper jury argument, when it stated that "even Susan Elrod said she thought that every person, including a homosexual, if she talked to them, they picked it up and looked at it, that they would say that this affronts or slights our community standards of decency," because nowhere in the record does Officer Elrod express an opinion as to what homosexuals may or may not think about the magazine. We disagree. The State's argument was clearly within the bounds of proper jury argument, because Susan Elrod testified that:

> I think if I went down on another floor of this courtroom with that magazine in my hand and walked up to every person on the floor and asked them what they thought about it, whether they were heterosexual or homosexual, I think they would think it positively disgusting.

Point of error three is overruled.

The trial court's judgment is affirmed.

---

ual bestiality, or the average person would find that facially the material depicts or describes representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; *and*

(4) *regardless* of what may be socially acceptable to the average person or what the contemporary community standards of propriety may be to the average person in the community, the material, taken as a whole, must lack serious literary, artistic, political, and scientific value. *Andrews*, 652 S.W.2d at 380 (emphasis in original).