**T.K.'S VIDEO, INC., Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–93–172–CR.**

Court of Appeals of Texas, Fort Worth.

July 26, 1994.

Rehearing Denied Oct. 11, 1994.

Malcolm Dade, Dallas, for appellant.

Bruce Isaacks, Crim. Dist. Atty., Jim E. Crouch, Asst. Dist. Atty., Denton, for appellee.

Before FARRIS, LATTIMORE and DAY, JJ.

## OPINION

LATTIMORE, Justice.

Appellant T.K.'s Video, Inc. (T.K.'s) was convicted by a jury of the offense of promotion of obscenity. TEX.PENAL CODE ANN. § 43.23(c) (Vernon 1989). The jury assessed punishment at a fine of $10,000. On appeal T.K.'s raises one point of error contending the trial court erred in submitting the charge to the jury using the wrong standard of proof.

We affirm.

Roland Ridge of the Denton County Sheriff's Office entered T.K.'s Video Store while working undercover and purchased one magazine entitled "Too Hot to Stop," depicting homosexual, heterosexual, and group intercourse. T.K.'s was charged by information with promoting obscene material. Deputy Ridge testified about the layout and contents of the store, and the circumstances surrounding the purchase of the magazine. Deputy Ridge and Deputy Elrod both stated their opinions that the average hypothetical adult Texan, applying Texas community standards, would find the magazines appeal to the prurient interest in sex.

In its sole point of error, T.K.'s complains that the trial court erred in submitting the charge to the jury using the wrong standard of proof. Evidence introduced at trial indicated that the magazine was directed at a sexually deviant audience. T.K.'s objected to the charge regarding the prurient interest portion of the obscenity test, arguing that materials aimed at sexually deviant groups cannot be judged by what appeals to the prurient interest of the average person. T.K.'s argument is grounded upon a misinterpretation of the contemporary community standards test for obscenity. *See Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419, 431 (1973);[1] *Andrews v. State,* 652 S.W.2d 370, 380 (Tex. Crim.App. 1983).[2] Under both state and fed-

---

1. The federal test for obscenity is: (1) whether the average person, applying contemporary community standards, would find the work, taken as a whole, appeals to the prurient interest; (2) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *Miller,* 413 U.S. at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 431.

2. The Texas test for obscenity is somewhat stricter than the federal test:

    (1) the average person, applying contemporary community standards, would find that taken as a whole the material alleged to be obscene appeals to prurient interest in sex; (2) the average person, applying current community standards of decency, would find that facially the material is so offensive that it is not decent; (3) the average person would find that facially the material depicts or describes representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, which ultimate sexual acts include but are not limited to sexual intercourse, sodomy, and sexual bestiality, or the average person would find that facially the material depicts or describes representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation

eral law, a jury is permitted to draw upon knowledge of the community and decide whether the *average* person, applying community standards, would find the materials in question obscene. *See Hamling v. United States,* 418 U.S. 87, 105, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590, 610 (1974); *Andrews,* 652 S.W.2d at 380.

T.K.'s mistakenly relies on *Mishkin v. New York,* 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966), as support for its position. In that case, the appellant argued that materials depicting deviant sexual practices do not satisfy the prurient-appeal requirement because they "disgust and sicken" the average person instead of appealing to him. *Id.* at 508, 86 S.Ct. at 963, 16 L.Ed.2d at 62. The Supreme Court rejected this argument and stated, "[w]here the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, the prurient-appeal requirement ... is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group." *Id.*

We do not read *Mishkin* to require a special jury instruction whenever there is evidence that obscene materials may attract a sexually deviant group. Rather, *Mishkin* merely stands for the proposition that materials targeting deviant groups are not beyond the scope of the obscenity laws just because they appeal to the prurient interest of a sexual deviant rather than the average adult.

If we followed T.K.'s argument in a case involving the obscenity of materials portraying adults engaged in sexual intercourse with children, the trial court would be required to instruct the jury that prurient interest would be defined from the viewpoint of the average pedophile. *See United States v. Guglielmi,* 819 F.2d 451, 455 (4th Cir.1987) (trial court in bestiality case involving obscene films was not required to ask the jury to find whether there was such a thing as an average zoophile and the appeal of the films to such a

person), *cert. denied,* 484 U.S. 1019, 108 S.Ct. 731, 98 L.Ed.2d 679 (1988).

Because we find the trial court properly instructed the jury on which standard of proof to apply, we overrule T.K.'s sole point of error.

The trial court's judgment is affirmed.

---

or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; *and* (4) *regardless* of what may be socially acceptable to the average person or what the contemporary community standards of propriety may be to the average person in the community, the material, taken as a whole, must lack serious literary, artistic, political, and scientific value.
*Andrews,* 652 S.W.2d at 380.